## Wells' Administrator, et al. v. Lewis, et al.

(Decided March 26, 1926.)

### Appeal from Muhlenberg Circuit Court.

1.  Sheriffs and Constables.—Whether sheriff was negligent in killing bystander while pursuing and shooting at another in a crowd at night held for jury.

2. Death—Widow and Children of Bystander, Killed by Sheriff Shooting at Another, May Bring Action for Damages Under Statute (Ky. Stats., Section 4).—Widow and infant children of bystander, killed by sheriff pursuing and shooting at another, may bring action for damages against sheriff, under Ky. Stats., section 4, authorizing such action where killing results from careless, wanton, or malicious use of firearms.

3. Death—Personal Representative of Bystander, Killed by Sheriff Shooting at Another May Bring Action, where Widow and Children Fail to do so (Ky. Stats., Sections 4, 6; Constitution, Section 241).—Where widow and children of deceased bystander, killed by sheriff who was shooting at another in crowd, failed to prosecute action for damages against sheriff, under Ky. Stats., section 4, personal representative of deceased could bring such action, under section 6, similar to Constitution, section 241, though primarily right of action was in widow and children.

WILIKINS & SPARKS for appellant.

EAVES & SANDIDGE and T. O. JONES for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

While pursuing and shooting at one Simms in a crowd at night, appellee, Lewis, at the time sheriff of Muhlenberg county, unintentionally shot and killed Earl Wells, and this suit, originating in the Muhlenberg circuit court, is by Wells' Administrator against the sheriff and his bondsmen, Fidelity and Deposit Company of Maryland, to recover damages for the wrongful death of Wells under section 6 of the statutes. At the conclusion of the evidence for the plaintiff the trial court directed the jury to find and return a verdict for the sheriff and his sureties, and this was done. Judgment being entered in accordance with the verdict, the administrator of Wells appeals.

The evidence shows that a crowd had gathered at night at a country schoolhouse to attend an ice cream supper, and that Sheriff Lewis was on hand for the purpose of preserving order, and especially to seek out and apprehend bootleggers, if any should appear upon the scene. Shortly after the sheriff arrived he noticed one Simms behind the schoolhouse with whiskey, and attempted to arrest him, but Simms fled through the crowd, the sheriff in pursuit, calling to him to halt. As they ran through the crowd the sheriff, pistol in hand, fired a shot in the direction of the fleeing culprit, the bullet taking

effect in the head of Wells, who was standing at an automobile with his family not far from the point where Simms passed in his flight from the sheriff. Wells died instantly. The answer of the sheriff denied negligence on his part in firing the shot, and in a second paragraph pleaded "that the decedent, Earl Wells, came to his death at the time and place complained of in the petition solely as the result of an unavoidable accident and casualty." As the case must be reversed for a new trial we will refrain from a further discussion of the facts, what we have said, we think, being sufficient to make the question of the sheriff's negligence one for the jury. While the judgment does not indicate on what grounds the court sustained the motion for a directed verdict for the sheriff and his surety, we assume from the statements in brief of counsel it was because the court was of opinion that the administrator of Wells could not maintain the action, when it was proven that the deceased left a wife and some infant children. As the death was the result of the use of firearms we think it will be admitted by all that the action might have been brought and maintained by the widow and infants, under section 4 of the statutes, in part reading: "The widow and minor children, or either or both of them, of a person killed by the careless, wanton or malicious use of firearms, . . . not in self-defense, may have an action against a person who committed the killing and all others aiding or promoting, or any one or more of them." Certainly the action may have been maintained under section 6 by the personal representative, which provides: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then in every such case, damages may be recovered for such death from the person or persons, company or companies, corporation or corporations, their agents or servants, causing the same, . . . and the action to recover such damages shall be prosecuted by the personal representative of the deceased," when the widow and infants failed to sue. This section also provides for distribution of the amount recovered in such action between the widow and children of the deceased. Section 6 of the statutes reads much like section 241 of the Constitution, which says:

"Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and per-

sons so causing the same. Unless otherwise provided by law the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made the same shall form a part of the personal estate of the deceased.''

This section was self-operative and gave a right of action before section 6 of the statutes was enacted. East Tennessee Telephone Co. v. Sims, 99 Ky 404. The real question in this case seems to be whether the administrator of the person killed by the careless use of firearms may maintain the action when it is shown that the deceased left surviving him a widow and infant children.

In discussing the question of who may maintain an action under such facts this court in the case of Howard's Admr. v. Hunter, 126 Ky. 685, said:

"The proper construction of the statute is that if the deceased leaves a widow and minor child or children then the action may be prosecuted by them; if he is not survived by either then his personal representative may sustain it. It was the manifest intention of the constitutional provision quoted to allow an action to be maintained whenever the death of a person was caused by the negligent or wrongful act of another, and it is not within the power of the legislature to deny this right of action. The section is as comprehensive as language can make it. The words negligence and wrongful act are sufficiently broad to embrace every degree of tort that can be committed against the person. . . .

"In short, every injury inflicted upon a person without legal right or excuse is a wrongful act without reference to the relation existing between the perpetrator and his victim. Clearly the death of a person caused by the careless, wanton or malicious use of firearms is a wrongful act, as much so as if the death was due to a blow with an iron poker or an ax or any other instrument. It would be most anomalous state of affairs to hold that the personal representative might maintain an action for damages resulting from the death of his intestate caused by any careless, wanton or malicious act, except when the weapon used to inflict the death was a firearm or

other deadly weapon. The effect of this construction would be that if the death was caused by smothering, drowning, burning or poisoning, the cause of action would survive to the personal representative, but if it was caused by the use of firearms or other deadly weapons it would die with him unless he left a widow or minor children. . . .

"There is no conflict between the sections; both may be upheld. Section 6 merely enlarges the remedy and gives the right of action not authorized by section 4. And so, if the widow or minor children will not prosecute the action under section 4, then the personal representative may do so under section 6. And, if the personal representative fails or refuses, the widow or minor child may sue."

Clearly section 6 is an expansion of section 4 of the statutes. There is no conflict in them. Under section 6 the personal representative of the deceased shall prosecute the action, but section 4 gives to the widow and minor children, either or both, the right of action in these words: "May have an action against the person who committed the killing." From what was said in the Howard-Hunter case, *supra,* we conclude that the primary right of action in such a case where there is a widow and infant children is in such widow and infant children; and if the administrator attempts to institute a second action where the widow and infant children had commenced an action under section 4 of the statutes, the court would give the widow and infants preference over the personal representative, and if the personal representative should first institute such an action as allowed by section 6, where the death was the result of the careless use of firearms, and the widow and infant children, one or both, should later institute such an action as allowed by section 4, the court would abate the action of the personal representative and allow the widow and children or the one instituting the action under section 4 to prosecute it to judgment. But in the absence of an action by the widow and infant children, or either, under section 4, the administrator may institute and prosecute an action for the same cause under section 6, and it will not be dismissed at the instance of the wrongdoer because not brought by the widow and infants. As said in the Howard-Hunter case, a personal representative may prosecute the case in either instance where the widow and infant children decline to institute an action under section 4, and the opinion might have gone further

and pointed out that the personal representative may in either case where an action is not instituted and prosecuted by the widow and infant children, as allowed by section 4, institute and prosecute an action under section 6 for any of the wrongs for which an action would lie under section 4. The two sections harmonize perfectly when read and considered together as above suggested. Entertaining these views we are forced to the conclusion that the trial court erred to the prejudice of appellant in sustaining the motion of appellees for a directed verdict in their favor.

Judgment reversed for a new trial in harmony with the views herein expressed.