## Louisville & Nashville Railroad Company v. Jones' Administrator.

(Decided October 1, 1926.)

### Appeal from Franklin Circuit Court.

1. Executors and Administrators.—Assets of trifling value within jurisdiction of county court of Tennessee will support appointment of administrator, though residence of decedent be in another state.

2. Executors and Administrators.—Appointment of administrator for decedent domiciled in Kentucky, by Tennessee court having assets within its jurisdiction, is conclusive and entitled to full faith and credit, in view of Constitution U. S., article 4, section 1.

3. Death.—Ancillary administratrix may sue under federal Employers' Liability Act for wrongful death of decedent (U. S. Comp. Stats., sections 8657, 8665).

4. Judgment.—Foreign judgment for ancillary administrator of deceased resident of Kentucky under federal Employers' Liability Act is conclusive in similar suit by domiciliary administrator; real parties in interest in both proceedings being identical (U. S. Comp. Stats., sections 8657, 8665).

5. Judgment.—A foreign judgment may be impeached for fraud only where fraud could be urged against it in courts of state where rendered.

6. Judgment.—Bar of foreign judgment for ancillary administrator under federal Employers' Liability Act cannot be avoided for fraud in subsequent suit by domiciliary administrator, where beneficiaries, real parties in interest, urge no such objection (U. S. Comp. Stats., sections 8657, 8665).

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, W. A. NORTHCUTT and J. P. HAMILTON for appellant.

JOHN D. CARROLL and BEN S. ADAMS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On March 29, 1924, Walter J. Jones, a fireman on one of the appellant's trains which run from Frankfort to Ravenna, Kentucky, was killed when the engine he was firing ran off the tracks and turned over near Trumbo, a flag station a few miles south of Frankfort. At the time of his death, Jones was living in Ravenna in Estill county and had been living there for a number of years. On May 20, 1924, the appellee, Tansel L. Jones, the brother of the decedent, was appointed administrator of the Jones' estate by the Estill county court, which concededly had jurisdiction so to do. As such administrator the appellee, through his attorney, took up with the appellant the matter of settling the claim which appellee asserted against the appellant for damages on account of the death of his decedent. On June 9, 1924, a claim agent of the appellant and appellee's attorney met for the purpose of discussing this claim and negotiating a settlement thereof. They came to no definite agreement, but parted with the tacit understanding that negotiations would be resumed in the near future. Not hearing any further from the appellant, the appellee filed this suit in the Franklin circuit court on the first day of July, 1924, seeking damages for the death of his intestate. As grounds for recovery, he alleged that the accident which caused the death of his decedent was brought about by appellant's negligence in furnishing defective cars and engines on which the decedent was working at the time of his death, in furnishing a defective road bed at the point of the accident and in the running by the engineer at a high and reckless rate of speed of the engine which turned over. It was then the appellee's theory that his decedent at the time of his death was engaged in intrastate commerce, and this continued to be his theory up to almost

the close of the trial hereinafter to be mentioned. But then discovering that the proof overwhelmingly established that his decedent was engaged in interstate commerce, the appellee amended his pleadings to conform to that state of fact, and this case thereafter proceeded as though it had from its outset been based on the federal Employers' Liability Act. The only question of negligence submitted to the jury was whether or not the engineer had run the engine at the time of the accident at such a reckless rate of speed as to cause it to leave the tracks and turn over, thereby bringing about the decedent's death.

In the year 1919, the appellee's decedent married Fannie Doty. There was born of this marriage one child, Walter J. Jones, Jr. Perhaps about a year after their marriage, appellee's decedent and his wife separated. At that time they were residents of Henry county, Tennessee. Appellee's decedent then came to Kentucky to live but his wife and child continued to reside in Henry county, Tennessee. When appellee's decedent came to Kentucky he left behind him in Tennessee some bed clothing and a feather bed, and these remained in the custody of a friend of his until after his death in March, 1924. The appellee's decedent and his wife were never divorced, but he seems to have contributed nothing to her support after their separation and but little, if anything, to the support of their infant child. The record hints in several places of bitter feeling on the part of appellee towards his sister-in-law. On May 24, 1924, Mrs. Fannie Jones was, by the county court of Henry county, Tennessee, appointed administratrix of her deceased husband, Walter J. Jones. On the 26th day of May, 1924, as such administratrix she instituted an action in the circuit court of Henry county, Tennessee, against the appellant for damages for the death of her husband which had occurred in Kentucky. The appellant filed its answer in that action traversing the declaration of the plaintiff. On July 15, 1924, during one of the regular terms of the circuit court of Henry county, Tennessee, that case was submitted to the jury under some sort of an agreement that the jury should find for the plaintiff in the sum of $5,-000.00. This the jury did under applicable instructions from the court, whereupon the court entered judgment in accordance with that verdict. The appellant paid the amount of this judgment and court costs into the court,

and this sum less those costs and an attorney's fee of
$1,000.00, allowed the attorney for the administratrix,
was paid over, one-half to Fannie Jones and one-half to
the infant, Walter J. Jones, Jr., they being the sole bene-
ficiaries under the federal Employers' Liability Act en-
titled to the recovery obtained in that suit for the death
of Walter J. Jones, Sr. The appellant then procured
properly certified copies of the proceedings in the county
court of Henry county, Tennessee, and in the circuit
court of that county and filed them with the answer it
filed to this suit, which was still pending in the Franklin
circuit court of this state, and which did not come on to
be tried until December 16, 1924. This answer of appel-
lant, in addition to traversing appellee's petition, also
pleaded contributory negligence, assumption of risk and
the finality of the Tennessee judgment, asserting that
under the federal Constitution it was the duty of the
Franklin circuit court to give to this Tennessee judgment
full faith and credit, and that, if it did so, such judgment
was a bar to this proceeding. A reply was filed to this
answer, traversing its affirmative allegations, and further
pleading the lack of jurisdiction of the county court of
Henry county, Tennessee, to appoint Fannie Jones ad-
ministratrix of her husband's estate. It also pleaded
that the judgment which had been procured by her in that
state in the Henry circuit court was fraudulent and collu-
sive. The appellant duly demurred to this part of the
reply, and, on the demurrer being overruled, traversed
such affirmative allegations as therein appeared, especi-
ally with reference to the alleged fraud and collusion.
There were some amendments later filed to the pleadings,
but the case came before the court with them substantially
in the foregoing condition. In the preparation for the
trial of this case, appellant took proof to establish the
fact that under the Tennessee law the county court of
Henry county had the right and authority to appoint
Fannie Jones administratrix of her husband's estate;
first, because there were present at the time of her dece-
dent's death in Henry county technical assets of his
estate, that is, the feather bed and a quilt which, as the
evidence shows, the Kentucky administrator later went to
Tennessee and sold for the sum of $5.00; secondly, because
under the Tennessee law a claim for damages on account
of wrongful death is transitory, and, although the death
may occur in some other state, such claim may be prose-

cuted by suit in Tennessee if the wrongdoer can there be summoned, as was the case here, since appellant's railroad ran through Henry county, Tennessee, and that, as such a claim could be so prosecuted it furnished alone proper foundation for the appointment of an administrator, even though there were no technical assets present in Tennessee. These propositions are supported by the cases of Anderson v. L. & N. R. Co., 128 Tenn. 244, 159 S. W. 1086, and Howard v. N. C. & St. L. Ry. Co., 133 Tenn. 19, 179 S. W. 380. Indeed appellee does not seriously controvert appellant's position with regard to the state of the Tennessee law. Appellant also took proof to show that the judgment of the Henry circuit court was not under the Tennessee law a confessed judgment, and that, until reversed, modified, or set aside, was final, and that the plea of fraud is under the law of that state one personal to the real parties in interest in the suit. When the case in the Franklin circuit court came on to be tried in December, 1924, the appellee moved the court to exclude from the consideration of the jury and from the ultimate decision of the case everything connected with the Tennessee proceedings, and this the court did. The case then went to trial on the issue of negligence *vel non,* and, under instructions from the court submitting the one question of negligence hereinbefore mentioned, the jury found a verdict in favor of appellee in the sum of $13,-550.00, of which $50.00 was for the benefit of the decedent's widow and the remainder for the benefit of his infant son. It may be said, in passing, that neither Fannie Jones nor her child took any part or interest in this Kentucky suit, nor did the statutory guardian of the child appointed by the Henry county court do so. On this appeal from the judgment entered on this verdict many grounds are urged for reversal, but, as the position taken by appellant with reference to the Tennessee judgment is conclusive of the controversies here involved, none of the other grounds need here be noted or passed upon.

The county court of Henry county, Tennessee, undoubtedly had jurisdiction to appoint Fannie Jones an administratrix of the estate of her husband. Whether or not the claim for damages for the wrongful death of her husband alone would support such an appointment is bound up in the further question whether or not an ancillary administrator may bring an action for wrongful

death under the federal Employers' Liability Act, for, unless such ancillary administrator may so do, it would seem that without other assets there would be no assertable asset or claim in Tennessee on which to base administration. However, since undoubtedly there were technical assets of the decedent present at the time of his death in Henry county, Tennessee, the county court of that county had the right to appoint an administrator of the estate of such decedent, Anderson v. L. & N. R. Co. *supra.* Having jurisdiction to appoint an administrator, the action of the Tennessee county court in exercising that jurisdiction is conclusive and full faith and credit must be given to its action by the courts of this state. Art. IV, section 1, U. S. Const. Fannie Jones then having been legally appointed administratrix of her husband's estate, the next question we have is whether or not as such administratrix she had the right to institute the suit she did in the Tennessee circuit court. Fannie Jones was not the domiciliary administratrix. The domiciliary administration was vested in appellee, as the decedent at the time of his death was a resident of and domiciled in Estill county, Kentucky. Fannie Jones then was only an ancillary administratrix. The question then is whether or not an ancillary administratrix may bring an action under the federal Employers' Liability Act to recover for the wrongful death of his decedent. In the case of Anderson v. L. & N. R. Co., 210 Fed. 689, Ray Farmer, who was an employee of the railroad and a resident of Whitley county, Kentucky, was killed while working for the railroad at Knoxville, Tennessee, and while engaged in interstate commerce. In due time his widow Sallie Farmer was appointed administratrix of her deceased husband's estate by the Whitley county court. She was the domiciliary administratrix. Thereafter and, as it would appear, done at her request, W. K. Anderson was appointed by the county court of Knox county, Tennessee, administrator of the estate of Ray Farmer. Of course Anderson was the ancillary administrator. He thereafter and with the entire concurrence of Sallie Farmer brought suit against the L. & N. for the wrongful death of his decedent. Among the many defenses pleaded was the one that under the federal Employers' Liability Act the ancillary administrator could not prosecute the right of action created by that act for the wrongful death of railroad employees, but that the

right to prosecute such an action was vested solely in the domiciliary administrator. The District Judge, who is now Justice Sanford of the Supreme Court of the United States so held but, on appeal by Anderson to the circuit court of appeals for the sixth circuit, the judgment of the district court was reversed in an opinion by Judge Warrington. In distinguishing the case of American R. R. Co. v. Birch, 224 U. S. 547, on which the district judge had based his views of the question, the circuit court of appeals said:

"It was there sought to maintain the suit in the names of the surviving widow and son, not in the name of an administrator, of the deceased. . . . The reasons for requiring such a suit to be instituted in the name of a personal representative, rather than in the names of the beneficiaries, manifestly differ from any reason that would limit the right to maintain such an action in the name only of the personal representative, who may happen to be appointed at the last domicile of the deceased."

After summing up the views of the District Judge to the effect that Congress could not have intended that a concurrent right of action should be vested in each of a number of personal representatives with the multiplicity of actions and endless confusion that would result therefrom, and that therefore it must be presumed that in vesting the right of action under the statute in the "personal representative" for the benefit of the beneficiaries named in such statute, Congress meant the domiciliary administrator, the circuit court of appeals went on to say:

"After all, the first of these views is an inference as to possible consequences of the act, rather than an interpretation of its language. And it is to be observed of both views that there is nothing in the act which explicitly clothes a domiciliary administrator with the exclusive right to maintain such an action; and it is by no means certain that such a restriction might not, simply through inability to obtain service of process upon the negligent employer at the last domicile of the deceased, cause greater inconvenience and hardship than could arise through distinct appointment of another administrator else-

where and his prosecution of the suit. The statute employs the generic term 'personal representative' and so describes a familiar class that would naturally include members that are ordinarily appointed in outside jurisdictions for legitimate objects of administration. In the absence, then, of expressed restriction to particular members of such a class, it can hardly be presumed that there was legislative apprehension of abuses from inclusion of the whole class. It is not suggested that abuses have arisen through unnecessary appointments and suits in the administration simply of estates; nor is it perceived why this situation should change merely because damages recovered here would belong to the beneficiaries instead of the estate, much less why possibility of abuses could be a true test of the right of plaintiff to maintain the instant suit. In any event, there could be but one satisfaction. . . . What reason then remains to accord to the domiciliary administrator, and deny to the other independent administrator, the right to maintain the suit? Certainly the statute law, as we have seen, is not so written. The Tennessee administrator's official character, as well as that of the Kentucky administratrix, corresponds with the statutory description 'personal representative,' and, inasmuch as the authority of the former is in Tennessee superior to that of the latter, the denial of such right in the former is equivalent to saying that a suit cannot be maintained in Tennessee at all. And yet the statute within its prescribed scope operates and is effective as the paramount law in Tennessee as well as in Kentucky and the other states. . . . Now, the effect of the remedial nature of the Employers' Liability Act and the representative character of the present suit cannot escape attention in a situation like this. Both of these features, together with the liberal construction they manifestly imply, would seem to be inconsistent with the idea that a right of action was vested solely in the domiciliary administrator. This is true, no matter whether the statute be regarded simply as destroying the effect of the common law maxim that a personal action dies with the person, and so removing an obstacle to the recovery of damages to the extent necessary to com-

pensate those for whose benefit the law was enacted, . . . or whether it be treated as designed 'to save a right of action to certain relatives dependent upon an employee wrongfully injured, for the loss and damage resulting to them financially by reason of the wrongful death,' . . . or as creating a new right of action . . . for the controlling purpose of the present act of Congress . . . is to benefit the surviving relatives, not the personal representative, of the deceased. Hence, as it seems to us, it is more in consonance with the statute, and is but giving effect to one of its paramount objects, so to construe it as to permit any validly appointed personal representative of a deceased employee to maintain the suit; and especially must this be so where it is plain, as here, that no injustice can thereby result either to the beneficiaries or the defendant."

The case of Howard v. N. C. & St. L. Ry. Co., *supra,* necessarily involves the same conclusion, for, as we have said, unless an ancillary administrator may bring such an action, without other assets there would be no assertable asset or claim in Tennessee on which to base administration. This Howard case held that a claim for damages alone for the death of one domiciled in Alabama would support administration granted in Tennessee.

It is true that in the Anderson case *supra* some stress is put on the fact that the Tennessee suit was being prosecuted at the instance and request of one of the beneficiaries of the recovery, if any should be had. But the same is true in the case before us. The real parties in interest in this case, whether in Kentucky or Tennessee, are Fannie Jones and the infant child, neither of whom is raising any question as to the sufficiency of the Tennessee judgment, nor is the guardian of the infant so doing. Only the appellee who is prosecuting this Kentucky suit solely for the benefit of Fannie Jones and Walter J. Jones, Jr., is contesting that Tennessee judgment. In the case of B. & O. v. Evans, 188 Fed. 6. relied on by appellee, the proceeding was not under the federal Employers' Liability Act. In that case, a suit brought by the domiciliary administratrix in Pennsylvania for the wrongful death of the administratrix's decedent, which occurred in West Virginia, was defended by the railroad with an inadequate settlement made by it with an ancil-

lary administrator appointed in West Virginia. No question of the right of the West Virginia administrator to maintain an action in that state was presented in that case nor was the power of the court having charge of the suit, or of the court appointing him to control or supervise the settlement involved. The sole question was the right of the West Virginia administrator to make the settlement he did. There was no question in that case of the finality of any West Virginia judgment but only whether the settlement made by the West Virginia administrator was so fairly made as to afford a defense to the Pennsylvania suit. We do not believe this Evans case is authority for the position appellee takes. On the contrary, we are of opinion that the reasoning in the Anderson case is sound, and that it is so applicable to the case before us as to be controlling. It therefore follows that the ancillary administratrix did have the right to bring the suit she did in the Tennessee court, and, having such right and having prosecuted that suit to judgment, and the judgment having been satisfied, such judgment is conclusive when pleaded in the Kentucky suit then still pending, unless appellee be correct in his further contentions that such judgment of the Tennessee court is void for fraud, and that because of the lack of identity and privity between the Tennessee administratrix and the Kentucky administrator, the Tennessee judgment is no bar to the prosecution of the Kentucky suit. Without going into a consideration of how far appellee may be correct in his position that there is no privity between ancillary and domiciliary administrators as a general proposition, the question we have before us is foreclosed by the opinion of the Supreme Court in the case of Chicago, Rock Island & Pacific Ry. Co. v. Schendel, Admr. of Hope, 46 Sup. Ct. Rep. 420, handed down after this case was briefed and orally argued. In that case Hope, an employee of the appellant railroad, was killed under circumstances establishing the neglect of the railway company and its consequent liability for damages. Suit was duly brought in the Minnesota state court under the federal Employers' Liability Law on February 21, 1923, for the sole benefit of the surviving widow. Thereafter the railroad company instituted a proceeding before the Iowa Industrial Commissioner under the Iowa Compensation Act on the theory that Hope had been killed in intrastate commerce. To this Iowa proceeding the dece-

dent's widow was made individually a party as the sole beneficiary under the Iowa Act. This case proceeded through the Iowa courts to a final adjudication in the district court of Lucas county, Iowa, on June 2, 1923. The judgment of the Iowa court specifically held that Hope at the time of his death was engaged in intrastate commerce. Thereafter this judgment was duly pleaded by the carrier in the suit pending in the Minnesota court. On appeal, the Supreme Court of Minnesota disallowed the plea of *res adjudicata* on two grounds, one of which was that there was a lack of identity of parties, since under the Iowa statute the right of recovery was in the beneficiary, while under the federal act the right was in the personal representative. In reversing the Minnesota Supreme Court and holding its reasoning bad on the proposition above noted, the Supreme Court said:

> "Hope's death as the result of the negligence of the railroad company gave rise to a single cause of action, to be enforced directly by the widow, under the state law, or in the name of the personal representative, for the sole benefit of the widow, under the federal law, depending upon the character of the commerce in which the deceased and the company were engaged at the time of the accident. In either case, the controlling question, is precisely the same, namely, was the deceased engaged in intrastate or interstate commerce? and the right to be enforced is precisely the same, namely, the right of the widow, as sole beneficiary, to be compensated in damages for her loss. The fact that the party impleaded, under the state law, was the widow, and, under the federal law, was the personal representative, does not settle the question of identity of parties. That must be determined as a matter of substance and not of mere form. The essential consideration is that it is the right of the widow, and of no one else, which was presented and adjudicated in both courts. . . . Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different, . . . and parties nominally different may be, in legal effect, the same."

In the case before us the real parties in interest in both the Tennessee proceeding and the Kentucky proceedings are Fannie Jones and Walter J. Jones, Jr. The

recovery by the Tennessee administratrix went solely for the benefit of these two. The recovery by the Kentucky administrator likewise so went. If identity of parties be as the Supreme Court says not a mere matter of form but one of substance, it is hard to see how there could be more substantial identity of parties than present in the two suits. It follows that the position of the appellee that the Tennessee judgment is not conclusive because of the lack of identity of parties in the Tennessee and the Kentucky suits is unsound.

So far as appellee's claim of fraud is concerned, it may be observed that he alleged no facts showing such fraud nor did he establish it by any proof. But, beyond this, the rule concerning the vulnerability of a foreign judgment when a plea of fraud is interposed to a suit in a domestic court seeking to enforce it, is thus stated in 34 C. J. 1153:

"Although there are many decisions and dicta to the general effect that a judgment of another state, when made the basis of an action, may be impeached on the ground that it was entered or procured by fraud, a more correct and precise statement of the rule is that such a plea is admissible when, and only when, fraud in the judgment could be set up against it in the courts of the state where it was rendered, the effect being to give the judgment just the degree of conclusiveness which it has at home and no more."

The testimony of James G. Johnson, an attorney of the Tennessee bar, found in this record, establishes the fact that under the Tennessee law the plea of fraud is personal. Appellee does not deny this proposition. Whether Fannie Jones individually or as administratrix, or whether the infant through his statutory guardian, could set aside the Tennessee judgment for fraud or interpose that plea to the defense based on that judgment and set up in this action, it is plain that at least where they are making no such complaint, the appellee may not. As shown above, he, at best, is only a nominal plaintiff. He is not the real party in interest. And if the *dominus litis* in the Tennessee proceeding or the beneficiaries thereof do not complain of the judgment rendered in that case, then the Kentucky administrator may not interpose such plea.

From the foregoing it results that the Tennessee judgment here pleaded was final and binding and the plea of *res adjudicata* good. The circuit court under the federal Constitution should have given the Tennessee judgment full faith and credit. Had it so done, the circuit court would have been compelled to dismiss the appellee's petition. For its failure so to do, its judgment must be reversed, with instructions to proceed in conformity to this opinion.

Whole court sitting.