# General Refractories Company v. Mozier.

## Same v. Carroll.

(Decided June 13, 1930.)

JOHN M. THEOBOLD for appellant.

DYSARD & MILLER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

The above two cases, which were heard together in the circuit court, will be disposed of in one opinion. The facts are these: The General Refractories Company owns a large plant, getting out fire clay in Carter county. It made a contract with Jerry Nolen by which Nolen got out clay at a certain opening, for $1.25 a ton; he hauling the clay in a wagon to the tipple. The company furnished the timber and tracking. He did his own timbering and furnished everything else and bought and used his own powder. After he had worked under this contract for about a year, he sold out to Middleton and Binion, who bought his team and with the consent of the company simply took his contract on the same terms as he had it. After this, in April, 1929, Middleton, who owned a farm, wanted to work the team on his farm for a while, and he and Binion agreed to suspend getting out clay as they used the team in hauling the clay. They, like Nolen, bought and used powder, and to prevent anybody from stealing the can of powder which they had, they dug a hole in ground about eighteen inches deep, put the can of powder in it and covered up the can with dirt eight or ten inches thick and left. This was on Thursday. Fred Caldwell, a boy about nine years old, was hiding in the bushes not far off and saw where they hid the powder. On Saturday morning he came back to the place, got the can out of the ground, opened it with a nail, and took a lot of powder out of the can, leaving the can setting there with the rest of the powder in it. He took the powder home and showed it to his mother. On Monday morning he and Leo Mozier, who was only five years old, went back there and filled a quart lard can with powder and started away with it. On their way home they met another boy, a little older than either of them, who had some matches and set the powder afire. The Mozier boy was so badly burned that he died in a few hours. The Carroll boy was seriously burned but did not die. These actions were brought by Will D. Carroll,

254

the father of Fred, and W. M. Mozier, the father of Leo, to recover for the loss of the services of his child and the expenses he had sustained, alleging, in substance, that the place where the powder was left was one where children played and that the refractories company was negligent in leaving the powder there where the children had access to it. Fred Carroll states that there were two cans of powder, one in the ground and one sitting on top of the ground, about half full of powder, and he also states that the can in the ground was not well covered. On the other hand, the proof by Binion and Middleton is that they only had one can of powder, and this was well buried, as above stated, and buried for the purpose that nobody could steal it; that they had no knowledge that the boy was in the bushes watching them, and it is reasonably clear that the boy knew of the presence of the powder only because he was in the bushes and saw them hiding it. Binion and Middleton expected to come back and go to work in a few days. The mine was upon the side of a cliff. There was no public way near it. The path leading from the hill down to the post office ran about 140 feet from the mouth of the mine where the powder was buried. There were twenty-three houses on the hill in which the miners lived and there was some proof by the plaintiff that the children of the community played around the dump of this mine and sometimes passed near it in a rough path. Under the dump there was a small pool of water, six or seven feet wide and a foot or more deep, in which some fisherman had put minnows. The children also played around this pool, which, according to the map, was some 40 or 50 feet from where the powder was hid. It is undisputed that the powder causing the explosion on Monday came out of the buried can which Fred Caldwell had opened with a nail on Saturday, and that no work was done at the mine after Thursday. Middleton and Binion worked as they pleased and quit when they pleased. No one directed them in their work. They hired help as they pleased and paid their own hands by reporting the amounts to the company, which paid the hands by deducting these amounts from what was coming to Middleton and Binion on the clay they delivered at the tipple at $1.25 a ton. The men that Middleton and Binion hired signed the company's workmen's compensation register. They had worked for the company before and did not sign a new card.

In the circuit court there was a verdict and judgment for the plaintiffs. The defendant insists that the court should have instructed the jury peremptorily to find for it: (1) because Middleton and Binion were not its servants, but independent contractors, and as such owned and had possession of the powder and the defendant had nothing to do with it and knew nothing about it. (2) Because the powder was buried, and the only reason the trouble occurred was that Fred Caldwell was hiding in the bushes and saw the men bury it and so knew where to look for it.

The first question to be determined is: Were Middleton and Binion servants of the General Refractories Company, and was their act of burying the powder as they did within the scope of their employment? In Diamond Block Coal Co. v. Sparks, 209 Ky. 73, 272 S. W. 31, the court thus laid down the rule as to who is an independent contractor and not a servant:

"In Messmer v. Bell & Coggeshall Co., 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1, we defined an independent contractor as one who is independent of his employer in the doing of his work and who may work when and how he prefers. In later cases, we said that a contractor who contracts to do a piece of work according to his own ideas or in accordance with plans and specifications previously furnished to him by his employer, and who has the right to select and employ his own assistants, the employer having no control over the assistants, and no right to direct the manner of doing the work further than to require that it shall be done in compliance with the plans and specifications under which it is contracted to be done, and who is answerable to the employer for the final result of the work only, is an independent contractor. Covington Co. v. Masonic Temple Co., 176 Ky. 729, 197 S. W. 420, L. R. A. 1918A, 436; D. E. Hewitt Lumber Co. v. Mills, 193 Ky. 443, 236 S. W. 949."

To the same effect, see Ballard, etc., Co. v. Lee, 131 Ky. 412, 115 S. W. 732; White v. Olive, etc., Co., 169 Ky. 834, 185 S. W. 107, and Borderland Coal Co. v. Burchett, 193 Ky. 602, 237 S. W. 663, 666. In the last case the court said:

"This rule is not changed by the fact that, by agreement, the person for whom the work is being

done advances to the contractor pay for his employees, and actually pays them, charging the amount paid to the contractor as against the specified contract price.''

In Mason & Hodge Co. v. Highland (Ky.) 116 S. W. 320, 322, the court thus stated the test for determining whether a person was a servant or an independent contractor:

"A satisfactory test in determining this question has been said to be: Who has the general control of the work? Who has the right to direct what shall be done, who shall do it, and how it shall be done? If the answer to these queries shows that this right remains in the employer, the relation of independent contractor does not exist between the contractor and the employer. On the other hand, if the employer has not this privilege, it does exist.''

To the same effect, see Madisonville, H. & E. R. R. Co. v. Owen, 147 Ky. 1, 143 S. W. 421; Sterns Coal Co. v. Spradlin, 176 Ky. 405, 195 S. W. 781; Glover v. James, 217 Ky. 572, 290 S. W. 344; Eutsler v. Huff, 222 Ky. 48, 299 S. W. 1070; Maggard v. Louisville Cooperage Co., 232 Ky. 20, 22 S. W. (2d) 279, 281.

The fact that the men employed signed the workmen's compensation register is not controlling:

"It was also shown that all of the employees of Reynolds as well as Reynolds himself were required to sign the workmen's compensation register of the appellee, and that the appellee carried compensation insurance on all these people. But, as pointed out in Raponi v. Consolidation Coal Co., 224 Ky. 167, 5 S. W. (2d) 1043, since this was done by the appellee as a matter of precaution, it played no controlling part in this controversy, and was not sufficient to establish that Reynolds or his workmen were employees of the appellee. Under the facts as above stated, the court correctly held that Reynolds was an independent contractor. Diamond Block Coal Co. v. Sparks, 209 Ky. 73, 272 S. W. 31, and cases therein cited.''

Under the proof clearly Middleton and Binion worked as they pleased and when they pleased. The

master exercised no control over the work. They employed such help as they pleased; they did the work in their own way without any supervision by the refractories company or its exercising any control over them. In addition to this, the master is never responsible for the acts of his servant, unless done within the scope of his employment. 18 R. C. L. 795; Stewart v. Lafoe, 194 Ky. 655, 240 S. W. 57; Armstrong v. Sumne, etc., Co., 211 Ky. 750, 278 S. W. 111; 2 C. J. 853; Brooks v. Gray, etc., Milk Co., 211 Ky. 462, 277 S. W. 816, 46 A. L. R. 1207. The authorities are agreed that in order to render the master liable for the servant's acts they must have been done while carrying on the master's business and within the course of the servant's employment. The powder in controversy was the property of Middleton and Binion. They had bought it and had the exclusive possession of it. The refractories company had no interest in it and had nothing to do with it. Middleton and Binion in burying this powder at the mouth of the mine were serving themselves and not acting in any sense in the scope of their employment or for the refractories company. They were simply doing an act outside of their employment, not contemplated by it; not in furtherance of the company's business, but only in furtherance of their own interest until they could get back and go to work again. It was their powder, stored for their private purposes, without the knowledge or consent of the company or any notice to the company that it had been done, and clearly the company is not liable for their acts if negligent. The court therefore should have instructed the jury peremptorily to find for the defendant in both cases under the evidence.

In the action of W. M. Mozier the proof showed that the child died within three hours, and it does not show any loss of services of any value in that three hours in the case of a five year old child or any expense by the father in that time. When the child died the entire cause of action for his death vested in his administrator. The father cannot sue and recover for the loss of services of his child between the time the child died and the time when he would have become twenty-one years old. Gregory v. I. C. R. R., 80 S. W. 795, 26 Ky. Law Rep. 76; Howard v. Hunter, 126 Ky. 685, 104 S. W. 723, 31 Ky.

Law Rep. 1092; Monahan v. Clemons, 212 Ky. 504, 279 S. W. 974. The father cannot recover for the burial expenses of a child, for under section 6, Kentucky Statutes, the administrator must pay the burial expenses out of the recovery for the death of the intestate and distribute the remainder to the heirs at law. The father was only entitled to the services of his child while he lived. When the child died the right of action for his death was vested in his administrator. His death caused the burial expenses.

In Jones Savage Lumber Co. v. Thompson, 233 Ky. 198, 25 S. W. (2d) 373, 376, the court thus stated the rule as to when the owner or occupant of property is liable for an injury to a child by an attractive nuisance:

"No owner or occupant of property can escape liability for an injury caused to a child by reason of an attractive nuisance allowed on his property, unless he can show that he exercised ordinary care under the facts and circumstances to render the thing constituting the nuisance harmless to children, or to prevent their going to, or playing around, the object."

The court did not submit to the jury the question whether ordinary care was used in hiding the powder. If on another trial there is evidence sufficient to take the case to the jury on the question of independent contractor, this question should be submitted to the jury by the instruction, and the court should also tell the jury that if Fred Caldwell only found the powder because he saw them hide it and otherwise would not have found it, then there was no want of ordinary care. If there is no evidence that they knew he saw them hide it, and if they used ordinary care, the case should not go to the jury. All other questions are reserved.

Judgment reversed, and cause remanded for a new trial.