William FENTON, Administrator of the Estate of Noble T. Rush, Deceased, Plaintiff in Error,

v.

SINCLAIR REFINING COMPANY, Defendant in Error.

No. 36289.

Supreme Court of Oklahoma.

Feb. 23, 1955.

Rehearing Denied May 17, 1955.

I. D. Moseley, Robert W. Raynolds of Moseley & Raynolds, John M. Wheeler, John M. Wheeler, Jr., of Wheeler & Wheeler, Tulsa, for plaintiff in error.

Ralph W. Garrett, Robert L. Imler, Dudley C. Phillips, Truman B. Rucker, Tulsa, for defendant in error.

**BLACKBIRD, Justice.**

This action was commenced by William Fenton as administrator of the estate of Noble T. Rush, deceased, to recover damages on behalf of said decedent's widow and minor children on account of said decedent's wrongful, instant death in an airplane accident. The defendant named in the action is Sinclair Refining Company, owner of the airplane and, in the administrator plaintiff's petition, the cause of action for the damages is predicated on said company's negligence in failing to keep the airplane in proper repair.

The accident and death occurred, near Ohio as revealed in Fenton v. Sinclair Refining Co., 206 Okl. 19, 240 P.2d 748, in or over the State of Kentucky, on May 8th, 1948. William Fenton, a resident of the State of Maine, was thereafter appointed Administrator of Rush's estate by the County Court of Tulsa County, Oklahoma, (of which decedent was a resident at the time of his death) and Fenton commenced this action in the District Court of said County, on January 11, 1950. These facts, the further fact that neither the plaintiff nor defendant in the action are residents of Oklahoma (both being residents of Maine) and the further fact that in Kentucky the period of limitation for bringing such an action is one year, KRS 1944, sec. 413.140 were made the basis of a motion by defendant for judgment on the pleadings, which motion the trial court sustained; and from its judgment dismissing the action plaintiff has lodged the present appeal. The parties will hereinafter be referred to as they appeared in the trial court.

The correctness of said judgment must ultimately be determined by the proper interpretation of Tit. 12 O.S.1951 § 99, which provides in part as follows:

"*Where the cause of action has arisen* in another State or country, *between non-residents* of this State, and by the laws of the State or country where the cause of action arose, an action cannot be maintained thereon by reason of a lapse of time, no action can be maintained thereon in this State; * * *." (Emphasis ours.)

It is recognized by both parties that the cause of action attempted to be alleged herein arose in Kentucky ("another State"), but, the crucial question, as indicated by the express wording of the above-quoted statute, is: Has the cause of action "arisen * * * between non-residents of this State * * *" within the meaning of said statute? In this connection, counsel for plaintiff calls our attention to the stipulated facts that the widow and children, for whom plaintiff administrator brings the action, are residents of Oklahoma, and they contend that the cause of action arose between them and the defendant corporation, rather than between the *administrator* (who they say is only a nominal plaintiff) and said corporation. Both counsel concede that both the party or parties in whose favor the cause of action "has arisen" as well as the party or parties against whom the cause of action "has arisen" must be non-residents in order for the statute in question to be applicable. Both counsel also seem to recognize that it is proper to look to the Kentucky law in attempting to determine the matter since the cause of action arose in that State. And, although at one place in their brief, defense counsel cite the case of Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, and confidently predict "This Court will not consider how Kentucky might decide this matter but will use Oklahoma decisions to reconstruct the legislative intent in connection with the construction of the Oklahoma statute involved * * *", they rely principally for their position that the cause of action arose between the administrator,

(rather than the widow and children) and the defendant foreign corporation, upon the wording of the Kentucky statute (KRS 1944, sec. 411.130), which they say *created* the cause of action for wrongful death in that jurisdiction and specifically vested it in the administrator (or other "personal representative of the deceased"). Said statute reads in part as follows:

"(1) Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent or servant caused it. If the act was willful or the negligence gross, punitive damages may be recovered. The action shall be prosecuted by the personal representative of the deceased.

"(2) The amount recovered, less funeral expenses and the cost of administration and costs of recovery, including attorney fees not included in the recovery from the defendant, shall be for the benefit of and go to the kindred of the deceased in the following order:

\* \* \* \* \* \*

"(b) If the deceased leaves a widow and children or a husband and children, then one-half to the widow or husband and the other one-half to the children of the deceased.

\* \* \* \* \* \*

"(e) If the deceased leaves no widow, husband or child, and if both father and mother are dead, then the whole of the recovery shall become a part of the personal estate of the deceased, and after the payment of his debts the remainder, if any, shall pass to his kindred more remote than those above named, according to the law of descent and distribution."

In view of the history of such statutes in this country, St. Louis & S. F. R. Co. v. Goode, 42 Okl. 784, 142 P. 1185, L.R.A. 1915E, 1141; Louisville R. Co. v. Raymond's Adm'r, 135 Ky. 738, 123 S.W. 281, 27 L.R.A.,N.S., 176; Gregory v. Illinois Cent. R. Co., 80 S.W. 795, 26 Ky.Law Rep.

76, and the fact that no action for wrongful death was known to the common law previous to the passage of Lord Campbell's Act, there can be little doubt as to the correctness of counsel's assertion that the above-quoted section *created* the cause of action in Kentucky. See Annotations, 39 A.L.R. 579. However, it does not necessarily follow that this statute vested the cause of action in the personal representative of the deceased, exclusively, especially in view of the wording of the Kentucky Statute as originally enacted. See Louisville R. Co. v. Raymond's Adm'r, supra. A precise determination of the matter has been rendered difficult by statements found in the opinions of the Kentucky courts. See, for instance, General Refractories Co. v. Mozier, 235 Ky. 252, 30 S.W.2d 952; Wells' Adm'r v. Lewis, 213 Ky. 846, 281 S.W. 996; Spangler's Adm'r v. City of Middlesboro, 301 Ky. 237, 191 S.W.2d 414; City of Louisville v. Hart's Adm'r, 143 Ky. 171, 136 S.W. 212, 35 L.R.A.,N.S., 207; Louisville & N. R. Co. v. Schumaker's Adm'x 112 Ky. 431, 53 S.W. 12. See also the discussion in Henderson's Adm'r v. Kentucky C. R. Co., 86 Ky. 389, 5 S.W. 875, 877, 878. One of the questions involved in the City of Louisville case [143 Ky. 171, 136 S.W. 214] was whether the settlement by Patrick Hart of a death claim arising out of his son Edward's wrongful death and sued upon by the administrator of Edward's estate, had the effect of defeating the administrator's action. There the court held that it did not, but, in the body of the opinion, said, among other things:

"If Patrick Hart had brought an action against the railway company to recover damages for the death of his son, *the court upon motion would at once have dismissed it upon the ground that he had no right to maintain it;* and yet it is said that he has the right to prevent the only person having authority to institute the action from prosecuting it to a conclusion. There would be little reason for giving the personal representative the exclusive right to institute and maintain an action like this if some other person could defeat his

authority by controlling the conduct of the case. Under our statute, the additional reason for denying to a beneficiary the right to settle the claim for damages, and thereby defeat a recovery in an action by the personal representative, exists in the fact that the recovery is charged with certain expenses that the personal representative would be obliged to discharge, but that the beneficiary might not be inclined to pay, and could not be held responsible for. But we do not put our decision that. the beneficiary cannot settle the claim and defeat the right of the personal representative upon this ground. We rest it entirely upon the ground that as the statute designated the personal representative as the person who must bring the suit, and who may settle and compromise the demand, no other person can institute the action or settle or compromise it *after he has been appointed.* We do not hold that the sole beneficiary might not settle before administration was granted, or that such a settlement in good faith would not bar an action by a subsequently appointed administrator." (Emphasis ours.)

In this connection, notice National Valve & Mfg. Co. v. Wright, 205 Okl. 571, 240 P. 2d 766, 29 A.L.R.2d 1448; Meyer's Adm'r v. Zoll, 119 Ky. 480, 84 S.W. 543, and the Annotations, 103 A.L.R. 445, 449. And, in Louisville R. Co. v. Raymond's Adm'r, supra, in discussing the history of death actions in that State and the effect of the adoption of sec. 241, of that State's. Constitution, and the above-quoted statute (as originally enacted by that State's First General Assembly) the Court said:

"In Eden v. Lexington, etc., R. R. Co., 14 B.Mon. 204, it was held by this court that, though an action to recover for pain and suffering of a person injured might be revived by his personal representative, still, where death resulted immediately, no action could be maintained for the loss of the life of a human being. To remedy this ruling, which was made in the year 1853, at the next session of the Legislature in the year 1854 (Act 1853–54, p. 175, c. 964), an act was passed which provided that, if the life of any person not in the employment of a railroad company should be lost by reason of its negligence, *the personal representative might maintain an action* and recover damages 'in the same manner that the person himself might have done for any injury where death did not ensue.' By another section of the same act it was provided that, if the life of any person was lost by the willful neglect of another, then his personal representative should have the right to sue and recover damages for the loss of his life. See 2 Stanton's Rev.St. p. 510. Under this statute, the employes of a railway company were placed upon a different footing from other persons, and only, railway companies were made liable to an action for death unless there was willful negligence. The statutes thus stood until the revision of 1873 (Gen. St.1873, c. 57, § 3), when the Legislature modified the section as to willful neglect by providing that 'the widow, heir or personal representative of the deceased' might bring an action. Gen. St.1888, c. 57, pp. 774, 777, § 3. Under this amendment, it was held by the court that, where the decedent left no widow or children, there could be no recovery for his death under the willful neglect section. Henderson's Adm'r v. Kentucky C. R. Co., 86 Ky. 389, 5 S.W. 875, 9 Ky.Law Rep. 625. So it was that railroad companies were not liable for the death of their employes unless there was willful neglect, *and the deceased left widow or children.* Other corporations or persons were not liable at all except in case of willful neglect, *and only then when the deceased left widow or children.* Thus matters stood when the constitutional convention met in 1891. To put all persons and corporations on the same footing, and *to allow a recovery in all cases whether the deceased left widow or children or not,* they adopted the following: 'Whenever the death of a person shall result from an injury inflicted by negligence or

wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. * * * At the first meeting of the General Assembly after the adoption of the Constitution the following provision was made by statute: 'Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then in every such case, damages may be recovered for such death from the person or persons, company or companies, corporation or corporations, their agents or servants, causing the same, *and when the act is willful or the negligence is gross*, punitive damages may be recovered, and the action to recover *such* damages shall be prosecuted by the *personal representative* of the deceased. * * *

" * * * The purpose of Lord Campbell's act and the various acts in this country following it was to do away with the common-law principle that a civil action could not be maintained to recover damages for the death of a human being. It was steadily maintained by this court under the acts in force previous to the adoption of the present Constitution that, if a person was injured and did not die immediately, an action might be maintained after his death by his personal representative upon the cause of action which accrued *to him* at the time of his injury, and in point of fact many actions were maintained by personal representatives in this way *where there could be no recovery for damages because the decedent left no widow or children*, or where for other reasons a recovery could not be had under the statute for his death. * * * It was pointed out by this court in Conner v. Paul, and in Donahue v. Drexler, that the statute allowing a recovery in the case of death was only intended to enlarge the remedy * * *.

"The plain purpose of the act of 1854 was simply to do away with the common-law holding that no recovery could be had when death resulted immediately. The cause of action by that act was vested in the personal representative, and it was manifestly intended *only to give him a remedy in cases where before there had been no remedy*. The debates of the Constitutional Convention show that their purpose was to remove the inequalities which existed under the statutes then in force. They put actions for death from negligence or wrongful act on the same plane, and they manifestly did not intend to interfere in any way with the common-law right of action which accrued to the person injured where he survived the injury, and died subsequently. * * * manifestly the statute was only intended to carry into effect the provisions of the Constitution; and, while it provides how a recovery shall go in an action to recover for death from negligence or wrongful act, this manifestly was not to create a right of action in the beneficiaries, but only to protect the recovery for their benefit from the claim of others." (Emphasis ours.)

It was indicated in the above and other decisions of the Kentucky Appellate Court that the purpose of KRS 411.130, supra, was the same as that of sec. 241 of that State's Constitution, namely, to preserve causes of action for personal injury, where, after the injury, the injured died as a result thereof and left no widow or children to bring the action. See Thomas' Adm'r v. Maysville Gas Co., 112 Ky. 569, 66 S.W. 398. In the light of decisions holding that causes of action for wrongful death arise or accrue at the time of the death (before any personal representative of the decedent's estate is appointed) so that the period of limitations starts running then, rather than later when an administrator or executor is appointed. See Carden v. Louisville & N. R. R., 101 Ky.

113, 39 S.W. 1027; Louisville & N. R. Co. v. Brantley's Adm'r, 106 Ky. 849, 51 S.W. 585; Louisville & N. R. Co. v. Simrall's Adm'r, 127 Ky. 55, 104 S.W. 1011; Faulkner's Adm'r v. Louisville & N. R. Co., 184 Ky. 533, 212 S.W. 130; McClure v. Alexander, 24 S.W. 619, 15 Ky.Law Rep. 732; Annotation, 13 A.L.R. 225, 230;. that where the personal representative has refused to bring the action, or there is fraud or collusion between him and the party sought to be made liable for the death, the heirs or beneficiaries may do so. See cases cited in Louisville & N. R. Co. v. Turner, 290 Ky. 602, 162 S.W.2d 219, 221; and that under the Kentucky death statute, the administrator, is merely the nominal plaintiff, the real parties in interest being the beneficiaries he represents, Vaughn's Adm'r v. Louisville & N. R. Co., 297 Ky. 309, 179 S.W.2d 441, 152 A.L.R. 1060; Square Deal Cartage Co. v. Smith's Adm'r, 307 Ky. 135, 210 S.W.2d 340; Deupree v. Levinson, 6 Cir., 186 F.2d 297, we think that the beneficiaries of the death claim and the person, firm, association, corporation, or group thereof, against whom the claim lies are the ones "between" whom "the cause of action has arisen" within the meaning of Tit. 12 O.S.1951 § 99, supra. We, of course, can make no determination as to whom such a cause of action accrues that can be binding in Kentucky, but we think our interpretation of this Statute of our own State is the only logical one, and the only one that could be said to have been within the contemplation of our Legislature when this law was enacted. And it comports with the interpretation given our own death statute. See City of Shawnee v. Cheek, 41 Okl. 227, 137 P. 724, 51 L.R.A.,N.S., 672. When it passed the law, it must be presumed to have been thinking of the substance of the matter, see Midland Valley R. Co. v. Townes, 179 Okl. 136, 64 P.2d 712—the real parties in interest—those who would suffer the detriment and be entitled to be compensated therefor, rather than he who might be required to represent them or bring the action for them in order to comply with some other statute enacted in this or some other jurisdiction which might be subject to various and sundry interpretations by this or some other court. In this connection we think the following portion of the quotation appearing in Louisville & N. R. Co. v. Jones' Adm'r, 215 Ky. 774, 286 S.W. 1071, 1075, 53 A.L.R. 1255, from Chicago R. I. & P. R. Co. v. Schendel, Adm'r, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757, which latter case involved an action for damages for the death of one, Hope, commenced under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., in the Minnesota State Court, is quite revealing on the point:

"'Hope's death as the result of the negligence of the railroad company gave rise to a single cause of action, to be enforced directly by the widow, under the state law, or in the name of the personal representative, for the sole benefit of the widow, under the federal law, depending upon the character of the commerce in which the deceased and the company were engaged at the time of the accident. In either case * * * the right to be enforced is precisely the same, namely, the right of the widow, as sole beneficiary, to be compensated in damages for her loss. The fact that the party impleaded, under the state law, was the widow, and, under the federal law, was the personal representative, does not settle the question of identity of parties. That must be determined as a matter of substance and not of mere form. The essential consideration is that it is the right of the widow, and of no one else, which was presented and adjudicated in both courts. * * * Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different, * * * and parties nominally different may be, in legal effect, the same.'"

Our statute speaks of "where the cause of action has arisen"—it does not say: "where a suit or action has been filed"; and incidentally, this is the reason that defense counsel's reference to the subject of the statute as "controversies between non-residents" is inapplicable. There is a well recognized distinction between the party to whom a chose in action belongs and he who has legal capacity to sue upon it or to settle

the suit after instituting it, in this connection see the discussions in National Valve & Mfg. Co. v. Wright, supra; Carden v. Louisville & N. R. Co., 101 Ky. 113, 39 S.W. 1027, 1028, and Deupree v. Levinson, supra, just as there is quite a difference between a chose in action or cause of action, and an action or suit, which is merely the means of enforcing, or recovering damages for, it. It cannot be too greatly emphasized that the term used in the statute is "cause of action." An incidental, but not unimportant consideration of resting the matter upon who are the parties to the "*cause of action*" rather than the "action" (as our Legislature has chosen to do) is stability and certainty in determining the forum in which such action shall be tried and the period of limitations applicable to it. Counsel refers to the selection of foreign administrators as an aid to "shopping" for a favorable forum, but, as will be seen, sec. 99, supra, as correctly interpreted, discourages such a practice. The case of Vassill's Adm'r v. Scarsella, 292 Ky. 153, 166 S.W.2d 64, relied on by defendant is not applicable. It dealt with a foreign administrator who was attemping to maintain a death action in a *Kentucky* court. Nor is the rule followed by the federal courts in determining diversity of citizenship for the purpose of ascertaining the jurisdiction of such courts (Mecon v. Fitzsimmons Drilling Co., supra) determinative of the matter.

It follows from the conclusions herein reached that, since Mrs. Rush and her children are residents of Oklahoma, the cause of action involved was not one that "has arisen * * * between nonresidents * * *" as contemplated in Tit. 12 O.S. 1951 § 99, supra, and the Kentucky one-year period of limitations is not applicable to this Oklahoma action. The action was filed within the applicable Oklahoma 2-year period of limitations, 12 O.S.1951 § 95, subd. 3. The trial court thus committed error in dismissing it as barred. Its judgment is therefore reversed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, ARNOLD and JACKSON, JJ., concur.

DAVISON, J., concurs in conclusion.

HALLEY, J., dissents.

HALLEY, Justice (dissenting).

It is my contention that a party plaintiff cannot be a nonresident for one purpose and a resident for another in the same action. We know that if an attempt to remove this case to the Federal Court had been made in the trial court, the administrator would immediatley have set up that he was a resident of Maine as was the defendant and assert there was no diversity of citizenship. However, here the counsel for the administrator are claiming that for the purposes of this lawsuit he is a resident of Oklahoma because he is the personal representative of the deceased who was a resident of Oklahoma at the time of his death. These are inconsistent positions.

The real question here is a construction of Section 99, 12 O.S.1951, in relation to the Kentucky statute of limitation of one year which applies in death cases. The statute of limitations in this case started running on May 8, 1948. If the case was filed in Kentucky it had to be filed by May 8, 1949. It had to be filed in Oklahoma by the same date if both parties were nonresidents under Section 99, 12 O.S.1951. Are the parties nonresidents? It is immaterial for whose benefit the suit was filed for it is a question who are the parties for the purpose of maintaining this lawsuit. In National Valve & Mfg. Co. v. Wright, 205 Okl. 571, 240 P.2d 766, 767, 29 A.L.R.2d 1448, which was a wrongful death case prosecuted by the administrator of the deceased, we said:

"Plaintiff in error contends that the widow was the real party in interest and therefore could compromise and settle the claim regardless of the wishes of the administrator, the administrator being in reality only her agent for the purpose of bringing the action. We are unable to agree with this contention. * * *

"* * * In the instant case the administrator had been appointed, and while he was a resident of the State

of Pennsylvania, and the reason for his appointment was to prevent the removal of the case to the Federal Court, he was nevertheless vested with all the powers of an administrator, and, under the statutes governing the conduct of such cases, when the action was brought by him he was vested with full authority to prosecute the same as in his judgment seemed best, and no settlement could be effected therein by the widow without his knowledge and consent."

When the administrator is appointed and files an action, it is his lawsuit from then on. Here he is beyond question a citizen and resident of Maine. The defendant was also a resident of Maine that had domesticated and was entitled to do business in Oklahoma. For the purpose of determining jurisdiction in litigation, it has been held that the mere fact that a foreign corporation has been domesticated and entitled to do business in a state does not make it a resident of the state for purposes of litigation. In Magna Oil & Refining Co. v. Uncle Sam Oil Co., 81 Okl. 8, 196 P. 142, we held that a foreign corporation that is doing business in this State was not a resident under our attachment statute and it would be required to put up an attachment bond as all nonresidents.

The State of Oregon has a statute identical with Section 99, 12 O.S.1951. It was referred to as Section 26, L.O.L. in the case of Hamilton v. North Pacific S.S. Co., 84 Or. 71, 164 P. 579. The opinion quoted the following authorities 164 P. at page 582:

"* * * The books are full of general statements in line with the authorities last above cited. 1 Cook on Corporations (7th Ed.) § 1, p. 3, states the rule as follows:

" 'The domicile, residence, and citizenship of a corporation are in the state where it is incorporated.'

"In 1 Thompson on Corporations (2d Ed.) § 490, p. 592, we find the following language:

" 'The first and prime rule is that a corporation is a resident or has its legal domicile in the state or country by and under whose laws it was organized. As said by one court: "A corporation can exist only within the sovereignty which created it, although, by comity it may be allowed to do business in other jurisdictions through its agents. It can have but one legal residence, and that must be within the state or sovereignty creating it." The authorities are practically unanimous on this proposition.'

"In 1 Clark & Marshall on Private Corporations, § 114, p. 352, it is said:

" 'The settled doctrine is that a corporation, for the purposes for which it may be considered a citizen resident, or inhabitant, is a citizen, resident, or inhabitant of the country or state by or under whose laws it was created or organized, and that it cannot be a citizen, resident, or inhabitant of any other country or state.' "

The following was adopted as a paragraph of the syllabus in conformity with the views expressed in the opinion:

"A foreign corporation is a 'nonresident,' although doing business within this state within meaning of L.O.L. § 26, providing that, when actions between nonresidents arising in another state are barred by statute of limitation of such state, no action thereon can be here maintained, such corporation being only a resident of the state incorporating it, the word 'resident' not meaning 'one found within the jurisdiction.' "

See also 53 C.J.S., Limitations of Actions, § 31.

The statute of limitations applies to the lawsuit that is filed and it is the parties to that particular action that answers the question as to whether one or two year statute controls. If an Oklahoma resident had been appointed administrator, this action could have been maintained under the two year provision of Oklahoma, but when a nonresident was appointed, which by the

way was done several months before the one year period from the happening of the accident had elapsed, he was bound by said Section 99 and he was not entitled to maintain the action after the expiration of one year.

I dissent.