## Louisville & N. R. Co. v. McCoy.

(Decided June 4, 1935.)

(As Extended on Denial of Rehearing Dec. 3, 1935.)

436

ASHBY M. WARREN and LOW & BRYANT for appellant.

GOLDEN, GILBERT & GOLDEN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

The Louisville & Nashville Railroad Company is appealing from a judgment recovered against it by Pinquard McCoy for $7,222 for personal injuries alleged to have been sustained by him as a result of the inhalation of carbon monoxide gas while at work in an ashpit in the company's yards at Wallsend, Ky.

Included in the numerous grounds relied on for reversal it is urged that the court committed prejudicial error in admitting incompetent evidence offered on behalf of appellee and in refusing to admit competent evidence offered by appellant. Since the judgment must be reversed on these grounds, no other grounds will be considered or discussed but are specifically reserved.

Appellee testified that he went to the ashpit to make repairs on an engine and was overcome by fumes from smoldering cinders; that he was violently ill for some hours; that on making an inspection the next morning he found there were ashes and live cinders in one end of the pit; that he had no knowledge or notice of this condition, and, because of improper lighting, could not have discovered it when he entered the pit. He testified that he continued to suffer ill effects from the inhalation of the gas from the cinders and that his condition gradually became worse. There is evidence that the carbon monoxide gas is thrown off from smoldering ashes and cinders containing unconsumed coal. Appellee and others testified as to the dimensions of the pit at the time he is alleged to have sustained his injuries.

Physicians who by training and experience were qualified to testify concerning the effects of the inhalation of the poisonous gas testified positively that appellee is suffering from pernicious anemia; that this ailment is progressive and incurable. They further testified that carbon monoxide gas attacks the blood cells and causes such a condition. They gave as their opinion that appellee's condition was caused by the inhalation of the carbon monoxide gas.

Physicians who testified for appellant and who examined appellee are equally positive in their opinion that his condition was not caused by the inhalation of carbon monoxide, and testified that they only found a slight anemic condition, and that this and other ailments found were due either to bad teeth, a deficiency of certain acids in the stomach, or to tapeworm or parasites in the intestinal tract.

**Prior** to the trial, appellee's deposition was taken as if on cross-examination pursuant to subdivision 8 of section 606 of the Civil Code of Practice, and over objections of appellant the court refused to permit this deposition to be read in evidence except for the purpose of contradiction, stating that only the contradictory part of the deposition might be read. In Johnson v. Langley, 247 Ky. 387, 57 S. W. (2d) 21, this court points out the distinction between the Code provision relating to taking the deposition of a witness and that relating to the examination of parties, and concludes that there is no restriction as to the use of the deposition of a party taken pursuant to subdivision 8 of section 606 of the Code, if the party is a competent witness, even though he may be present and testify at the trial.

It is next urged that the court erred in refusing to admit in evidence photographs showing the pit with an engine on the tracks over it. Such evidence would be competent if it is shown that the conditions were the same at the time the photographs were taken as they were at the time appellee is alleged to have sustained his injuries. Under the evidence we would not be inclined to hold that the court erred in this particular, and, since the evidence may be different in the event of another trial, the court will be guided by the general rule respecting the admissibility of this character of evidence.

It appears in evidence that physicians who made examination of appellee at the instance of appellant took specimens of his feces or ordure, and they testified that they made a laboratory examination thereof which revealed the presence of eggs of a tapeworm or other parasite. One of these specimens was sent to an eminent pathologist in Louisville who does laboratory diagnosis for doctors and hospitals, and another was sent to a doctor in Lexington who does a similar work. The doctor in Louisville testified that his microscopic examination of the fecal excrement sent him revealed the presence of tapeworm eggs, and the doctor in Lexington stated that his examination revealed the eggs of a parasite but that he was not sufficiently experienced in such matters to distinguish the eggs of a tapeworm from those of other parasites. The doctors testified that tapeworm might cause a slight anemic condition, and one of the physicians testified that a certain type af-

fected the blood and produced a condition so much like pernicious anemia that the only way to determine this condition was by finding the evidence of this tapeworm in the bowel movement. The court refused to permit the evidence of the Louisville and Lexington doctors as to what their examination of the specimen sent them revealed to go to the jury, and counsel for appellant are earnestly insisting that this was prejudicial error.

From the foregoing recital of the conflicting evidence concerning the cause of appellee's illness and apparent anemic condition, the importance of the rejected evidence is at once apparent. The local physicians who sent these samples testified that they were procured from appellee and were placed in sealed containers and sent by special delivery to the doctors in Louisville and Lexington, properly addressed, stamped, and accompanied by a letter requesting that an examination be made and the report furnished. The physicians to whom they were sent testified that they received them by special delivery from the physician at Pineville, sealed and inclosed as testified to by him, and accompanied by a letter. As we understand it, the admissibility of the evidence turns on the question of the identity of the matter sent for analysis, and our conclusion is that the evidence on this question was sufficient, and the physicians should have been permitted to testify concerning what their examination revealed. See Barton v. Commonwealth, 257 Ky. 23, 77 S. W. (2d) 397.

Over the objections of appellee, the court admitted evidence that the bottom of the pit had been filled in since the date appellee is alleged to have sustained his injuries so as to reduce its depth, and it is argued that this constituted reversible error. In the case of L. & N. Ry. Co. v. Rowland's Adm'r, 215 Ky. 663, 286 S. W. 929, Mrs. Rowland, in attempting to board a train during a heavy rain, when the depot platform and steps leading into the coach were slippery, either because of her hurried effort to board the train or the height of the steps, fell and sustained injuries which it was alleged resulted in her death. On appeal, one of the grounds urged for reversal of the judgment in favor of the administrator was that the court erroneously admitted evidence of changes made in the platform after the accident. The court in sustaining this contention cited Ashland Supply Company v. Webb, 206 Ky. 184,

266 S. W. 1086, wherein other authorities of similar import are cited and the reason for the rule that evidence of subsequent repairs is inadmissible was fully stated.

On cross-examination A. F. Smith was asked if on a certain occasion he made a statement to Mrs. Irena concerning the dangerous condition of the ashpit, and he denied making the statement about which he was asked. Mrs. Irena was then called and permitted to testify that he did make such statement. Counsel for appellant contend that this evidence was incompetent and inadmissible because the statement about which Smith was asked was collateral and irrelevant to the issue; but as we view the matter it clearly was relevant to the issue and the court did not err in admitting the evidence of Mrs. Irena.

Question is made that the court improperly refused to allow Abe Hoskins to testify that appellee was in charge of the shift on which he worked and that Hoskins carried out his orders, and also in refusing to allow Hoskins to state that there was nothing to prevent appellee from seeing the condition of the cinders when in the pit with Hoskins shoveling them out. Of course the witness should be permitted to state any facts within his knowledge concerning these matters, but not to give mere conclusions.

Complaint is made that in reply to hypothetical questions the witnesses Miracle, Girkman, and Drs. Combs and Wilson were permitted to give their conclusions instead of their opinions. Of course witnesses should state facts and experts should state opinions based upon facts; however, it is apparent that no error was committed in this particular, except that Dr. Combs should not have been permitted to testify concerning reports respecting the effect of monoxide gas on soldiers in the trenches during the World War.

It is our further conclusion that the court did not err in refusing to allow the witnesses Oakley and Hoskins to testify that they never knew or heard of any one being overcome or affected by gases in other cinder pits.

In the circumstances revealed by the record it is apparent that Dr. Gianini should have been permitted to testify concerning observations made by him in connection with other physicians who were making an examination of appellee.

Counsel for appellee are correct in their contention that in the circumstances it was improper to admit evidence as to the manner in which ashes and cinders at other points on appellant's lines were handled.

For the reasons indicated, the judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.