# R. L. Jeffries Truck Line v. Brown (two cases).

November 26, 1946.

406

King & Flournoy for appellant.
N. Powell Taylor for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

D. B. Brown, appellee, sued R. L. Jeffries Truck Line, appellant, for personal injury damages growing out of an automobile collision. Carrie Brown, appellee, who is D. B. Brown's wife, and who owned the automobile driven by him on this occasion, sued the same appellant for property damage growing out of the same accident.

Judgments having been rendered in favor of D. B. Brown for $2,000 and in favor of Carrie Brown for $1,030, the appellant now prosecutes this joint appeal in the two consolidated cases.

Appellant's sole contention on this appeal is that the lower court should have directed a verdict in its behalf at the conclusion of all the evidence produced on the consolidated trial. Appellant says that it was entitled to such directed verdict because there was no evidence on the trial, sufficient to support the verdicts of the jury, showing that the appellant's truck involved in this collision was being operated by appellant's agent acting within the scope of his employment upon this occasion.

Appellees' evidence showed that D. B. Brown, a deputy sheriff, was driving alone and after midnight, from the City of Henderson toward his home at Corydon; that he, seeing what he judged to be a truck approaching him and running in a reckless manner, pulled off the main part of the highway toward his right side and stopped; that the truck collided with the car of appellee, damaging it beyond practical repair and injuring its occupant substantially, thereby rendering him unconscious; that the truck had appellant's name on it; that its operator was Perry Biggs, one of appellant's regular drivers, and that he was drunk at the time of the collision. The foregoing constitutes what we believe to be a fair summarization of all the appellees' evidence.

Appellant introduced three witnesses, towit, Clyde Jeffries, secretary and treasurer and part owner of appellant corporation and the person in charge of appellant's business in Henderson County; also, M. H. Thorn, supervisor or foreman or "truck pusher" of appellant's

business in the same territory; also, E. S. Ramsey, a truck driver for appellant, fellow workman of the ill fated truck driver and his roommate at the time of the collision. The substance of the testimony given by these witnesses was that the culpable driver Biggs was employed to work for appellant by the hour upon any occasion when he was dispatched or sent out on a haul trip; that no one, excepting Clyde Jeffries, its secretary-treasurer, or M. H. Thorn, the "pusher," had authority to dispatch the trucks and their drivers on haul trips; that Biggs had completed his authorized duties around the noon hour previous to the time of the accident and had no trip to make thereafter; that Biggs was not working for appellant at the time of the accident, but was on some unauthorized mission of his own and was driving appellant's truck on that occasion without its knowledge or consent; that appellant had, through Jeffries and Thorn, specifically forbidden Biggs to drive or to use its trucks, excepting on authorized haul trips; that Biggs had, upon this occasion, left his room and roommate, his fellow workman Ramsey, around six-thirty or seven o'clock in the evening with the announced intention of going to Uniontown; that Biggs returned to his room in the early morning hours of the following day and remained there in bed until he was shortly thereafter arrested and taken to jail; that the truck involved in this accident was one with only a bed and winch on it, that is without the regular trailer equipment generally used on most haul trips; that Biggs never worked for appellant after this accident and that his present whereabouts are unknown; that the records of appellant show that Biggs was not dispatched on a haul trip after the noon hour preceding the time of the accident; that the company's records showing the trips made were kept in Evansville and were not immediately available for this trial.

There is no doubt in our minds that the appellees made out presumptive causes of action against apellant through the medium of their evidence and its weight and character as produced by them on the trial. See Wood v. Indianapolis Abattoir Co., 178 Ky. 188, 198 S. W. 732; Mullen & Haynes Co. v. Crisp, 207 Ky. 31, 268 S. W. 576; Bowen v. Gradison Construction Co., 224 Ky. 427, 6 S. W. 2d 481. When appellees made out their prima

facie cases, as they surely did, the burden then fell upon appellant to disprove, to overcome and to erase the cloud of legal liability thereby cast like an ominous shadow upon the vulnerable position into which the fortuitous circumstances of this unfortunate accident had thrust this appellant. Therefore, we are fundamentally concerned with the totality of appellant's erasure of this legal shadow. Did appellant successfully meet and carry, on this trial, the burden placed upon it by our established law?

Appellant's evidence consisted of the general outline summarized above. The appellees offered nothing whatever in rebuttal. We searched this record thoroughly but in vain in pursuing the possibility of finding some evidence which would show appellant's driver Biggs to have been engaged in some mission for his master on this occasion. We read every line of testimony of this entire case. We found no mission of the master, no authorized trip or dispatched errand or permission or knowledge of the master, no enterprise of profit to Biggs' employer hidden away among the episodes of this eventful and tragic trip which was taken by Biggs in his employer's truck on the night of this accident.

It is a well established legal conception that the holding of a truck or car owner responsible for damages that may have been done through such vehicle's operation rests entirely upon the theory of a relationship of master and servant or of principal and agent existing between such owner and the vehicle's operator at the time of the commission of the damages. The reason for this rule is apparent when we consider that a man might otherwise be forced into bankruptcy itself by the depredations of a thief or by the foibles of a mischievous high school boy as an ultimate result of the unauthorized taking of a car from its owner's driveway. It has been found impractical by the courts to countenance a legal liability based upon a mere automobile ownership or simply upon an accessibility of an owner's vehicle to the nefarious designs of some wrongdoer. For a clear pronouncement of this doctrine see the cases of Corbin Fruit Co. v. Decker, 252 Ky. 766, 68 S. W. 2d 434; Brady v. B. & B. Ice Co., 242 Ky. 138, 45 S. W. 2d 1051; Keck v. Louisville Gas & Electric Co., 179 Ky. 314, 200 S. W. 452, L. R. A. 1915C, 654; also, other cases cited in those just named.

In the Corbin Fruit Company case, supra, [252 Ky. 766, 68 S. W. 2d 438,] we find a well known legal principle, which we believe to be the established law of this jurisdiction and of many other jurisdictions, set out in the following language: "It is universally agreed that where an employee, while on his own time, and in pursuit of his own pleasure or business, takes the car of his employer without permission so to do being asked of any one, by any one or given by any one, and while operating it upon or along a highway, runs into and injures another, the employer is not liable. See Musachia v. Jones, 65 Cal. App. 283, 223 P. 1006; Brenner v. Walsh, 206 App. Div. 469, 201 N. Y. S. 482; Susser v. Delovage, 73 Mont. 354, 236 P. 1082; Cannon v. Goodyear Tire & Rubber Co., 60 Utah 346, 208 P. 519, 521; Glass v. Wise & McAlpin, 155 La. 477, 99 So. 409; Fiocco v. Carver, 234 N. Y. 219, 137 N. E. 309, 310; Mullen & Haynes Co. v. Crisp, 207 Ky. 31, 268 S. W. 576; Crady v. Greer, 183 Ky. 675, 210 S. W. 167."

In the Mullen & Haynes Company case, supra, we had a situation similar to the one presented in the instant case. That too was a case of a regular truck driver taking off with his employer's truck, contrary to his instructions and without the knowledge or consent of the truck's owner. The collision of that case also happened upon a day of the truck driver's regular employment, but at a period of the truck driver's off duty hours. That case also presented a mishap which occurred while the truck driver was entirely on a mission of his own concern, not one of any concern or of any profit to his employer, the truck owner, but rather it was such a mission as was contrary to the employer's instructions and devoid of its knowledge or consent. In that case we held that the trial court should have directed a verdict in favor of the truck owner at the conclusion of all the evidence. Unless we should be willing to overrule the law of that case and many other cases, we would have to rule similarly in the instant case.

We are cognizant of the fact that we have held in some cases that there must be a question for the jury's decision as to whether or not the relationship of master and servant or of principal and agent existed under some circumstances. But those cases involved an automobile driver who was more than the ordinary hired employee,

that is to say they involved one who was a local manager or a person of similar authority. In cases of that kind, the manager or person of some extra authority could be engaged in furthering his employer's business at many odd hours and upon various missions toward which his own discretion had directed him. For a case of this kind see Ashland Coca Cola Bottling Co. v. Ellison, 252 Ky. 172, 66 S. W. 2d 52.

Appellees direct our attention to the fact that the truck driver Biggs did not appear as a witness. We believe that this was sufficiently explained by evidence that he stayed in jail forty or fifty days; that he was no longer employed by appellant after the accident; that his whereabouts were unknown at the time of the trial. Appellees also direct our attention to the fact that appellant did not produce its records, which records showed, appellant's witnesses stated, that Biggs was not dispatched on any trip after the noon hour which preceded the accident. Appellees could have taken the depositions of appellant's officers over in Evansville and could have compelled them to file copies of these records had they desired to do so and had such records been favorable to appellees' theory of the case.

If Biggs was actually on some mission in furtherance of appellant's business at the time of his drunken accident, at the time he was operating appellant's skeletonized equipment after midnight out on the Henderson-Corydon Highway, then such mission would surely be discoverable by making a thorough investigation among appellant's customers in the section around Uniontown and in other nearby localities where appellant did business.

Under the law and the facts as we have related them above, we are compelled to direct a reversal of the judgments against appellant, with the further direction that the trial court shall peremptorily instruct the jury to find in favor of appellant upon a second trial of these cases in the event that the evidence should be substantially unchanged at the conclusion of the next trial.

Judgments reversed.