## Middleton v. Commonwealth.

May 20, 1947.

R. Monroe Fields, Judge.

J. L. Hays for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant was charged by indictment with voluntary manslaughter, the descriptive portion alleging that while operating a truck on the highway he did so in such unlawful, felonious, reckless, wanton and negligent manner as to cause it to collide with a truck being driven by Mrs. Nanye Potter, inflicting wounds upon her body which caused her death. Following proof and instruction the jury returned a verdict of guilty, with penalty of four years imprisonment.

On appeal it is insisted that the court erred to the prejudice of his substantial rights: (1) In admitting incompetent evidence. (2) The verdict is excessive, contrary to the evidence, the result of passion and prejudice on the part of the jury. (3) Error in instructions, particularly in giving an instruction on voluntary manslaughter, because not justified by the proof, and lastly that the court should have sustained motion for favorable directed verdict, made at the conclusion of the evidence.

The unfortunate accident in which Mrs. Potter, an estimable married woman, lost her life, occurred July 31, 1946, on highway No. 119, near Millstone in Letcher County. At the time of the collision she was driving her husband's pick-up truck; appellant driving a 5 ton truck which he was employed to drive in maintenance work, being done by a road construction company. The work was what is commonly known as black topping, appellant engaged in hauling material from its location to places where it was to be spread. The accident occurred on or near a very slight curve (degree not given)

and on what was estimated to be a 2 per cent grade. The proof shows that at the time of the accident Mrs. Potter's truck was on her side of the road, and until shortly before the collision the truck driven by appellant was on his side, but because of skidding and attempts to straighten his truck, it veered to his left and struck the small truck on its left and front. Mrs. Potter was, as we gather the proof, driving up-grade at about 30 miles per hour, and while not clear from the proof it is gathered that appellant was driving downgrade on the inside of the slight curve.

Appellant appears to be the only eyewitness to all that occurred immediately before and at the moment of the accident, so we will first give his version. He was twenty-two years of age and married, and had about eight years' experience in driving trucks. He was employed by the construction company and put in charge of the truck on the morning of the accident which occurred on his first trip. He had dumped one load of asphalt and was returning to the supply point for another. He said that as he started back it began to rain, and he started to set his windshield wiper to working, but there was none. He looked for some place to park and found none. He said, ''I come on and took my foot off the accelerator and let it ease down the hill; I wasn't making over 25 or 30 miles an hour. I touched my brakes and it turned the rear around, and in order to get it straightened up, and when I got it straightened I was right on this truck, and I cut to the ditch so maybe they could pass me on the right; when I hit it knocked me out a couple of minutes, then I jumped out and went over to her side and I didn't see anybody until about a minute and a half and some fellows came up.'' He asked them to take deceased to the hospital, and he and several others concluding that Mrs. Potter was beyond medical help, took the body to a funeral home, and appellant surrendered to the sheriff. If we gather his testimony arightly, he said that from the point where the slight curve begins to the place of collision he could see about 200 or 300 feet.

It appears from the testimony that two days before the accident oil had been put on the road, or at least on one side, and it had been raining for about ten minutes before the accident, and he says the road was wet. He

was frank on his cross-examination, and when asked how far he was from the pick-up truck when he started cutting to the left, he said he did not know, but that when he lost control and his car went to the left, he was about 50 or 75 feet from the point of impact, and he did not see the small truck until he was almost on it, and cut to the ditch.

There is no conflict as to how the accident occurred or what caused it. There are conflicts only as to whether it was raining at the time of the accident, or immediately before, and as to the presence of oil on the road at or near the point of accident, and as to speed of the big truck prior to the accident. Some witnesses say that it was not raining; that there was no oil; that the road was dry, and some disagree as to the speed of the truck shortly before the collision. One witness, who was at a distance, fixing the speed at 50 miles, others at 35 miles per hour. However, as we view the whole record, there is no need to discuss the conflicts of proof.

The rule we have applied in a number of cases, where death was caused by the operation of a motor vehicle, is well stated in Com. v. Mullins, 296 Ky. 190, 176 S. W. 2d 403, which came up for certification of the law. In that case we said that involuntary manslaughter is the killing of another in doing some unlawful act not amounting to a felony and not likely to endanger human life and without intention to kill, or the killing of another while doing a lawful act in an unlawful or negligent manner, where the negligence is such as to indicate a disregard for human life. Hunt v. Com., 289 Ky. 527, 159 S. W. 2d 23. We also quoted from Cornett v. Com., 282 Ky. 322, 138 S. W. 2d 492-494: "One who drives an automobile on the highway in such a manner as to violate the law of the road, or negligently and carelessly drives same so as to endanger the life or limbs or property of another * * * and in so doing strikes and kills another, * * * is guilty of involuntary manslaughter."

We applied the principles in Lewis v. Com., 301 Ky. 268, 191 S. W. 2d 416; Dixon v. Com., 302 Ky. 353, 194 S. W. 2d 655; Newcomb v. Com., 276 Ky. 362, 363, 124 S. W. 2d 486. In many of these cases the facts were strikingly similar, and this is true of the facts in the

recent case of Hudson v. Com., 304 Ky. 220, 200 S. W. 2d 462, which we reversed on grounds of improper instruction on involuntary manslaughter.

The alleged objectionable testimony relates to introduction of photographs of the pick-up truck taken, by whom is not shown, a short time after the accident. The objection was based solely on the ground that it was taken "several days after the accident." Mr. Potter, who offered them, testified that its condition was the same when they were taken as it was immediately following the collision. Their introduction was not objectionable on the ground urged. Louisville & N. R. Co. v. McCoy, 261 Ky. 435, 87 S. W. 2d 921.

Since we are of the opinion that the proof was not sufficient to authorize an instruction on voluntary manslaughter, the judgment is reversed with directions to grant a new trial to appellant consistent herewith. Other questions discussed in briefs are reserved.

Judgment reversed.