## Square Deal Cartage Co. et al. v. Smith's Adm'r.

### Same v. Todd's Adm'r.

January 30, 1948.

Rehearing denied April 27, 1948.

136

Keenon & Odear and Ben D. Smith for appellants.

Sandusky & Krueger for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

Otis C. Todd and Mrs. Nellie Smith were killed in an automobile collision on Highway No. 27, in April,

1946. Suits by the administrators of their estates against the Square Deal Cartage Company and Harrison H. Graves were tried together and resulted in verdicts for $10,000 and $6,000, respectively. Appeals have been considered together.

The collision was between a Buick car and a combined tractor and trailer. Todd owned and drove the car and Mrs. Smith was a guest. On the front seat with the driver was his brother, Ernie Todd and his wife, and on the rear seat, Mrs. Smith and her husband, the parents of Mrs. Todd.

■ The question is raised as to the sufficiency of proof of ownership of the tractor-trailer and the liability of the defendant, Square Deal Cartage Company. The machine was composed of two units. What is called the tractor consists of a cab and framework, upon the rear of which rests the front of a vehicle like a large box car. The connection or union is flexible. When the trailer is uncoupled, small wheels called "dolly wheels" are let down for the front of the van to rest upon. The van or trailer was owned by Fruehauf Trailer Company and was being taken from Chicago to Atlanta. Although the defendant Graves testified that he and his brother owned the tractor, it was admitted that the Square Deal Cartage Company had a license and permit from the Kentucky Division of Motor Transportation to operate a trailer convoy through the state, and this vehicle carried a plate issued to that company. Its general manager, called as on cross-examination, testified that the company had allocated this particular plate to Graves and that he was operating the machine under the company's instructions. The tractor bore the following on the door: "Trailer Convoy. Operated by Square Deal Cartage Co." In addition there were various letters and figures of weight and numbers of permits. The company pleaded that it was delivering the trailer to Atlanta for Fruehauf Trailer Company under a contract and had executed a bond to indemnify the owner against damage in transit. The company counterclaimed for damage to the trailer for and on behalf of the owner. Graves entered a counterclaim for damage to the tractor.

It seems to us that the evidence authorized the court

to instruct the jury that if Graves, the driver, was culpably negligent, a verdict against both him and the company might be returned. There is nothing to show any independent relationship of Graves. If he owned the tractor, it is manifest that he was using it as the agent for and in behalf of the company. If it were otherwise, the company did not meet the burden of proving it. Irvin v. Madden, 281 Ky. 7, 134 S. W. 2d 942; Webb v. Dixie Ohio Express Company, 291 Ky. 692, 165 S. W. 2d 539; Dixie Ohio Express Company v. Webb, 299 Ky. 201, 184 S. W. 2d 361; R. L. Jeffries Truck Line v. Brown, 303 Ky. 405, 197 S. W. 2d 904. The case is nearly the converse of Lyons v. Great A. & P. Tea Company, 301 Ky. 827, 193 S. W. 2d 450, where merchandise of the defendant Tea Company was being carried under contract by the owner of the truck.

■ The point of collision was variously stated to be from 20 to 50 feet south of a short bridge over Caney Fork Creek. Plaintiff's automobile was going north on the outside of a sharp curve and the defendant's machine was going south on the inside of the curve. The visibility is good in both directions, the inside area being flat. The approach from the north is straight until it enters the curve. Each driver saw the other car coming. The truck was running from 25 to 45 miles an hour. The surface of the roadway was about 23 feet wide. The passenger car was five feet from fender to fender, and the width of the other vehicle was eight feet and the overall length 40 feet.

The evidence for the plaintiff, consisting principally of the testimony of Ernie Todd and his wife, is, in effect, that having seen that the large van and the car would be meeting on the bridge and there would be difficulty in passing on it, Todd, the driver, pulled his car to the side of the road and stopped. The right wheels were on the gravel berm, a foot or so from a post and cable barrier. It was on the outer side of the curve. The defendant's vehicle came over the center line as it crossed the bridge, and as it was in the act of passing, ran or swung over beyond the center line and crashed into the left front and side of the Buick automobile, on which side Otis Todd and Mrs. Smith were sitting. The machine was caved in. The collision was with the left back part of the tractor and the front corner of the trail-

er van. Photographs confirm the terrific impact. Ernie Todd testified that immediately after the accident he took note of the marks on the highway, which began two or three feet from the rear end of the Buick, left of the center line, and that a track was made by the "dolly wheels" of the van having dropped. He also described a scraped place in the gravel made by the stationary wheels of the Buick car when it was knocked sideways over within six or eight inches of the cable barrier. Three highway patrolmen, who were soon at the scene, also described these marks on the highway and another cut place in the road eight or ten feet long. They testified to seeing a wide track east of the center line. The back wheels of the trailer are double and have large wide treads.

The defendant's vehicle ran about 140 feet up the road before it was brought to a stop. The collision had destroyed the effectiveness of the brakes and impaired the gears so that it could not be stopped sooner.

On the other side of the case, Graves testified that he saw the Buick automobile approaching 100 to 200 feet away and that he was going eight or ten miles per hour as he crossed the bridge; that the Todd automobile did not stop but came on and "when he saw that he was on the bridge, coming off, he didn't have room, the speed he was traveling, to go between me and the bridge; he cut to the left and cut into the rear wheel of my trailer." He stated that at no time was any part of his vehicle, either the trailer or the van, over beyond the center line of the road. He is corroborated by his young nephew who was riding with him. Graves was positive that the dolly wheels were not broken loose and did not drop down, as he had lowered them afterward in order to uncouple the tractor, so they could not have made the marks on the road as the plaintiffs' witnesses related. But it appears from a photograph of the machine that the gas tank and other parts on the side had broken loose and dropped down. Graves testified that when the automobile ran into the rear corner of the tractor it broke the drive shaft of his car and it fell to the highway. It was this that made him lose control of the machine so that it ran some distance after the collision.

The defendant's theory of the case is sustained by

testimony of a man and wife who were in a car following the van that as it approached the bridge it slowed down to about ten miles an hour and stayed on its right side of the road and never did get over the line. However, the witnesses could not say how the immediate collision was caused as the big van obscured it from their view. A person in a car following the Todd automobile testified that it was going about 40 miles an hour, and he likewise corroborated Graves, saying that the automobile did not slacken speed or stop, but cut over or slipped into the back end of the tractor and the front end of the trailer. There was also contradictory evidence as to the marks on the road as testified to by plaintiffs' witnesses by persons who were at the scene immediately afterward.

The argument that the evidence of the plaintiffs is contradicted by the physical facts and, therefore, has no probative value, rests principally upon the fact that if the automobile had been still and the accident had occurred as Ernie Todd and his wife said it did, then it would have been knocked much farther than six or eight inches toward the barrier. There are several other apparent contradictions and discrepancies, but they are not of controlling importance. There is positive verbal testimony and substantial corroboration as to what caused the marks, which take this case out of such cases as Silver Fleet Motor Express v. Wilson, 291 Ky. 509, 165 S. W. 2d 48. There and in other like cases the primary evidence consisted of physical conditions which were wholly inconsistent with the claim of the defendant's negligence. We are of opinion that the conflict in the evidence in this case was properly submitted to the jury to determine who was right.

■ Complaint is registered of the admission of a number of photographs of the highway, particularly of what appear therein to be marks in the road. They were taken the morning after the accident, which had occurred in the late afternoon. While the photographer was not introduced, the fairness and accuracy of the views are established by other witnesses whose testimony is to the effect that the conditions revealed in the pictures were the same as they were immediately after the accident. The evidence as to the tracks and impressions on the road held to be incompetent in Appalachian

Stave Company v. Pickard, 266 Ky. 565, 99 S. W. 2d 472; Id., 260 Ky. 720, 86 S. W. 2d 685, tended to show that they probably were or may have been made by other automobiles. Here those who had seen the conditions at the time of the accident verified the existence of those conditions revealed in the pictures. The witnesses were fully cross-examined with reference to them and none expressed more than a doubt. Rather, to state it conversely, some of them said the marks "looked like" what they had seen the afternoon before. We think the photographs were properly admitted. Louisville & Nashville Railroad Company v. McCoy, 261 Ky. 435, 87 S. W. 2d 921.

■ In two of the pictures Ernie Todd is shown standing on the road. They reveal marks in the road, one of which is a foot or so from the center line and the other on the berm, appearing to be a scraped out place. A photograph of a person taken in order to show the precise position of a party or to show where some moving or movable object was at a given time is not competent, for it is self-serving and not corroborative. Here the only purpose of the man in these pictures was to point out or draw particular attention to fixed marks that were seen immediately following the accident. The presence of the person in the pictures here was not sufficient ground for rejecting them. Welch v. L. & N. Railroad Company, 163 Ky. 100, 173 S. W. 338; Nunnelley's Adm'r v. Muth, 195 Ky. 352, 242 S. W. 622, 27 A. L. R. 910.

■ Over the defendants' objection, Mrs. Ernie Todd was permitted to testify that ten or fifteen minutes after the accident Graves said to her: "It wasn't what I was thinking about, it was what I was trying to do," or something like that. The statement was made in response to her general inquiry or remark, "What did that fellow mean," or something to that effect. The witness did not know then she was talking to the driver. The sheriff of the county at another time had asked Graves "How come you to hit these people?" and he answered something to the effect that "You can't drive a trailer as big as this one on a curve as sharp as this and keep the trailer on the right side of the road." The court in each instance properly admonished the jury that they should consider the statement only in so far

as it might affect Graves as a defendant and not as testimony against the company. It seems to us the evidence was properly admitted under these admonitions.

■ It was stipulated in the beginning of the trial that Otis Todd and Mrs. Smith were killed as a result of the collision. During its course, a witness who had gone upon the scene was asked to tell the jury what he had seen inside the car, and in doing so he related that the Todd boy was dead and "there was a lot of blood. I couldn't tell a great deal about it. It looked like his brains were running out on the seat." Another witness related that the woman's face "was tore all to pieces," and further, "the woman's face was all bloody. I couldn't tell what was done to it but it looked like it was in an awful bad shape." Objections of the defendants and their motions to set aside the swearing of the jury on account of this evidence were overruled. The evidence was incompetent. It proved nothing that was not admitted. It seems not to have been merely voluntary or intentional on the part of either witness, but was drawn out of them. The evidence could only have been introduced to arouse the sympathies and to inflame the emotions of the jury. L. & N. Railroad Company v. Scott's Adm'r, 184 Ky. 319, 211 S. W. 47. But its admission is deemed not to have been prejudicial or to have had the effect stated, for the amount of each verdict was very reasonable.

■ A number of criticisms are leveled at the instructions. They were numerous and may have been confusing. They could probably have been condensed and merged. We deem it enough to discuss only some of the criticisms.

(a) One criticism is that the instructions assumed the agency of Graves for his codefendant, the Square Deal Cartage Company. The consideration given this point in relation to the motion for a peremptory instruction covers it here.

(b) In the Smith case we think it was proper not to have charged the decedent with any negligence of the driver, Otis Todd. It appears that he had made the trip into Somerset in order to take his brother, Ernie Todd, to see the draft board. Mrs. Smith and her husband, as well as Ernie Todd's wife, just went

along for some shopping or other personal purpose. We perceive no relationship of agency, direct or through the law of joint adventure. She was a guest and there are no circumstances that would charge her with contributory negligence.

(c) The instructions in the Todd case authorized the jury to award $255 funeral expenses and $825 damages to the deceased's automobile, as well as the conventional measure of damages for the destruction of his power to earn money. The verdict is, as we have said, for the round sum of $10,000 and probably the jury disregarded both of the special items of damage, but the appellants claim it was error to include authority to award any sum for funeral expenses. This seems to be the first time the question has been presented to this court in a suit by an administrator for a wrongful death. The administrator specially pleaded and proved it.

The courts which have directly expressed themselves on the point are divided in regard to the right to recover funeral expenses in an action for wrongful death. Shearman & Redfield on Negligence, Section 865; McCormick on Damages, Section 97; 25 C. J. S., Death, sec. 108; 16 Am. Jur., Death, 193; Annotation, 94 A. L. R. 440. A large majority hold such damages recoverable. Differences in the language of the several statutes authorizing such actions or differences in the bases of computation or measure of damages account for some of the divergence. Thus, in Iowa it is held that funeral expenses cannot be allowed specially as an element of damage, since death would have eventually laid its hand upon the deceased, and, consequently, the only loss to the estate is the use of the money which the estate has been compelled to pay prematurely. It is held that the item could be considered by the jury under a specific instruction in determining the present worth of what the deceased would have accumulated and saved for his estate had he been permitted to live out his expectancy, that being the standard of measurement for death in Iowa. But the court held the amount of hospital and doctors' bills to have been properly allowed, since there was no assurance that the decedent would have ever suffered like injuries resulting in like expenditures. Brady v. Haw, 187 Iowa 501, 174 N. W. 331, 7 A. L. R. 1306.

In this state, the right of action for the death of a person resulting from a negligent or wrongful act of another is authorized by Section 241 of the Constitution and Section 411.130, KRS, formerly Section 6, Kentucky Statutes. It must be prosecuted by the personal representative of the deceased (unless he refuses) and the amount recovered, *less funeral expenses* and the cost of administration and cost of recovery, including attorneys' fees not embraced in the recovery from the defendant, is for the benefit of the kindred of the deceased, to be distributed as specified in the statutes. Distribution is in accordance with the statute of descent and distribution of a personal estate, except that if the decedent leaves a widow or husband and no children, the entire net recovery goes to the widow or husband. See L. & N. R. Co. v. Turner, 290 Ky. 602, 162 S. W. 2d 219.

The question is not free from doubt since it has been held that the measure of damages or amount of recovery is for the destruction of earning power. Thus the administrator in such an action cannot recover hospital and doctors' bills for the decedent (West v. Nantz's Adm'r, 267 Ky. 113, 110 S. W. 2d 673), or for both his pain and suffering following the accident and for his death. Hackett, Adm'r, v. Louisville, St. & L. & P. T. Ry. Co., 95 Ky. 236, 24 S. W. 871. In an action brought by the father for the death of a minor son, killed in an industrial accident, it was held he was limited in his recovery to loss of services preceding death and could not recover burial expenses because the right of action for the death was in the son's administrator; that his death caused that expense and the statute requires the administrator to pay funeral expenses out of any recovery and distribute the remainder to the beneficiaries prescribed by the statute. General Refractories Company v. Mozier, 235 Ky. 252, 30 S. W. 2d 952. True, the statement is not a direct decision of the point here presented, but it is not altogether dictum, for it is the reason assigned for the decision which was made. Although strictly construed, the destruction of earning power cannot include the expense of burial, yet the personal administrator is merely a nominal plaintiff in an action for death, and the real parties in interest are the beneficiaries whom he represents (Vaughn's Adm'r, v. L. & N. Railroad Company, 297 Ky. 309, 179 S. W. 2d

441, 152 A. L. R. 1060), and the statute requires the payment of burial expenses out of any recovery. We think it was the legislative intent that such expenses should be regarded as an element of damage. The court, therefore, concludes that no error was committed in this case in submitting it as a special item of damage.

■ The closest point in the case is whether the court committed error in limiting his admonitions to the jury and overruling a motion to discharge it because of improper argument of one of the plaintiffs' attorneys.

In the course of the argument, an attorney for the defendants had said that the reason they were having to defend the cases and the jury to try them was "because these people sitting over here (pointing to the plaintiffs) are money crazy." In response plaintiffs' attorney said: "Then he talked about dollars and cents to these poor, unfortunate people. What about this corporation, for it is in evidence that this was a corporation?"

Upon objection, the court said, "The jury won't consider that." The attorney continued: "I want to take his pictures (shows pictures). What does that say on the side of that truck, of their works? Were they to blame, were they on the wrong side of the road, this trailer convoy operated by Square Deal Cartage Company of Detroit, Michigan? He spoke about Mr. Graves being in the army. They also introduced evidence to show that Otis Clayton Todd had been in the service and wounded. Yes, he lost a toe, and his skull was fractured in battle. In other words he left his blood on the fields of battle for you and me, and for this great American country of ours. No doubt his mother in his absence and during his affliction, with a broken heart, prayed to Almighty God to return her boy—and he did come back. He came back to enjoy life in this great American country—but only to have his life crushed out by the driver of this great corporation."

Upon objection, the court then said: "The jury won't consider the fact that it is a corporation."

The attorney continued: "Don't you believe that they are entitled to pay any damage for coming down

here in our country and taking the life of one of our people?''

The defendants had brought into the case the fact that the decedent, Otis Todd, had suffered a brain concussion or light injury while in the army. The vice in the argument is the dramatic appeal based upon the broken heart and prayers of his mother and, finally, that his life was ''crushed out by the driver of this great corporation.'' That this argument was inflammatory and wrong there is no doubt. The only question is whether it can be deemed a prejudicial error.

In view of the fact that the defendant's attorney had drawn the fire by his charge that the plaintiffs were ''money crazy,'' coupled with the further more important consideration that the reasonableness of the verdict indicates the members of the jury were not biased or prejudicially affected by the argument, we conclude that the improper statements do not require a reversal of the judgments.

The judgments are accordingly affirmed.