**FIELDS v. PROCTER & GAMBLE DISTRIBUTION CO., Inc.**

No. 11064.

United States Court of Appeals
Sixth Circuit.

June 1, 1950.

Rehearing Denied July 11, 1950.

---

John B. Anderson, Owensboro, Ky., E. B. Anderson, John B. Anderson, Owensboro, Ky., on the brief, for appellant.

Clarence Bartlett, Owensboro, Ky., Woodward, Bartlett, Hobson & McCarroll, Owensboro, Ky., on the brief, for appellee.

Before HICKS, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

HICKS, Chief Judge.

Suit by appellant, William Fields, against appellee, Procter & Gamble Distributing Company, Inc., for damages for personal injuries.

At the close of appellant's evidence the court sustained appellee's motion for peremptory instructions, hence this appeal.

About 6:00 P.M. on January 28, 1949, appellant (herein called Fields) was struck and seriously injured by a Ford car owned by appellee and driven by one Charles Greene. At the time of the accident Fields, travelling along Fourth Street in Owensboro, Ky., was attempting to cross Frederica Street from the east to the west side and was struck near the intersection by the car going north on Frederica toward the Ohio river.

Our question is, should the jury have been permitted to determine, among other issues, whether the relationship of master and servant existed between Greene and appellee at the time of the accident, and whether at that time Greene was acting within the scope of his employment. The district court answered in the negative. We take a contrary view.

Our sole duty is to ascertain whether there was substantial evidence tending to show that Greene was the agent or employee of appellee and acting within the scope of his employment at the time of the accident, and we are required to view the evidence in the light most favorable to appellant.

Greene was a salesman for appellee in Owensboro and the surrounding territory and the car was furnished him by appellee for use in the prosecution of his work but he was permitted to use the car for his own private purposes, business or pleasure, both within and without regular hours, which ordinarily terminated at 5:00 P.M.

Some time before the accident, Greene had signified his desire to quit his employment and move to Texas, and it is unquestionably true that his employment was terminated some time in the afternoon or evening of January 28, 1949. There is substantial evidence that about 4:00 o'clock in the afternoon of that day J. T. Brown, appellee's sales supervisor and Greene's superior, "checked" Greene out and the two men went to Greene's room in the Lea Apartments in Owensboro and checked certain equipment in his possession, such as orders, advertising matter, etc., and placed them in the car. This was done to see that the equipment was in proper order for Greene's successor. Brown was asked:

"Q. Was his work for the defendant through after he made that one call after you had checked him out? A. That is right.

"Q. And put the car in the garage? A. That is right."

At that time the car was standing in the street in front of the Lea Apartments and near the U. & L. garage, where it was finally stored. The Lea Apartment building was located on the corner of Third and St. Elizabeth Streets and the U. & L. garage adjoined it on its east side. Greene usually parked the car in front of the apartment building during nights and at other times when it was not in use.

Brown testified that after checking the equipment he left Greene who had one more call to make which would take not more than an hour, and that he told Greene that as soon as he finished his business to

store the car and that it was to remain in storage for the incoming salesman.

Greene testified that he did not do any work for appellee on January 28th but that he was on the payroll on that day, that he spent it packing, paying his personal accounts, shipping his baggage and telling his friends goodbye, and that he used the car for these purposes; that about 4:00 o'clock he picked up a friend, one William Carroll, and that they visited other friends to tell them goodbye; that they finished these social visits at about five minutes to six o'clock. He further testified:

"Q. Then what did you do? A. Drove immediately to the garage.

"Q. Now when you say to the garage, what do you mean? A. Where I stored the company's car.

"Q. Was that at your home? A. Yes, right where I lived.

"Q. All right, did you store the car? A. Correct, after I had had the accident."

He further testified that he and Carroll took Fields to the hospital in the car, then went to the police station, and after leaving there took the car to the garage; that a friend then drove him to an airport, where he took a plane for Texas. It is well to note here that Greene's testimony was by deposition, taken by appellee but read by appellant, and in his direct examination he stated that at the time of the collision he was performing no duty for appellee but that the use he was making of the car at that time was personal to himself. However, on cross-examination he testified that after he had said goodbye to Mr. Snyder, one of his friends who lived on East 19th St., it was getting dark. He was asked:

"Q. Was it then that you decided to store the car? A. No, I had made that decision earlier in the day by authority of the Procter & Gamble Distributing Company.

"Q. You mean that you had talked to some official of the Company about storing the car? A. That is right.

"Q. Who did you talk to? A. Mr. J. T. Brown. * * * He gave me that information when I was with him on Wednesday or Thursday, I don't remember which. He was with me the last week down there. * * *

"Q. And did he direct you to store that car? A. Yes sir, he did.

"Q. Did he tell you where to put it? A. No sir.

"Q. He left that to your discretion? A. Entirely to me, that's right. * * *

"Q. In other words, you were going to store the car in this U. & L. garage when you hit William Fields? A. That is correct * * *".

Greene further testified that the collision interrupted his progress and that but for the accident he would have continued north on Frederica St. and stored the car; that when he finally stored it he told the attendant to hold the car for Mr. Brown, who would pick it up. He further testified:

"Q. On that same day and immediately prior to the collision I will ask you if you were not motivated by a desire to benefit the Procter & Gamble Company when you drove toward the U. & L. garage with the idea of storing their car there? A. That was my job. I had been ordered to do that.

"Q. And you were following orders? A. I was following orders, However, I had no specific time to put it in there, just so I got it in there before I left.

"Q. That is what Mr. Brown told you, just to put it in there before you left? A. That's right.

"Q. And during the time that intervened before you did leave you had no prohibition placed upon you by Brown or anyone else as to how you could use the car? A. That's right. * * *".

There is substantial evidence from which a jury might reasonably conclude that it was Greene's purpose to drive along Frederica from 19th St. to 3rd St., to store the car in the U. & L. garage, and that he would have done so had not the accident occurred at 4th St. Third Street was a little more than a block beyond Fourth Street. There is evidence that on January 31, 1949, Brown and Hochman, Greene's successor, went to the garage, where Brown took the car out of storage

and delivered it to Hochman for use in his work as a salesman. Brown testified that the car was stored to be held for the benefit of appellee.

 Our review of the evidence convinces us that it cannot be said as a matter of law that Greene's service with appellee had terminated before the collision. Whether it terminated when Brown checked him out or when he stored the car after the collision is a question of fact peculiarly for the determination of a jury. We think there is substantial evidence for the consideration of a jury upon the material question as to whether Greene was acting for and on behalf of appellee and by its direction at the time of Fields' injury. It must be kept in mind that we are not concerned here with the weight of the evidence, or with contradictory evidence, or with the credibility of witnesses. It is undoubtedly true that by the law in Kentucky as well as elsewhere, the liability of appellee for damages caused while the car was being operated by Greene rests entirely upon the relationship of master and servant, and upon whether at that time Greene was acting within the scope of his employment.

In R. L. Jeffries Truck Line v. Brown, 303 Ky. 405, 408, 197 S.W.2d 904, 906, it is said: "It is a well established legal conception that the holding of a truck or car owner responsible for damages that may have been done through such vehicle's operation rests entirely upon the theory of a relationship of master and servant or of principal and agent existing between such owner and the vehicle's operator at the time of the commission of the damages." See also Corbin Fruit Co. v. Decker, 252 Ky. 766, 68 S.W.2d 434.

Appellee leans heavily upon a number of cases decided by the Court of Appeals of Kentucky but the difficulty is that they are out of line with the factual situation here presented and are not apposite to the question here involved, that is, the right of the appellant to have his case submitted to a jury.

The judgment appealed from is reversed and the case is remanded for a new trial upon the issues here involved, as well as upon the question of negligence and such other questions as are in issue by appropriate pleadings.

SIMONS, Circuit Judge (dissenting).

I think the order of dismissal should be affirmed. I am unable to accept the doctrine governing the majority opinion that one who borrows his employer's car for use on his own affairs remains or becomes the agent of the employer as a matter of law when he returns the car as directed.