### Peoples v. Commonwealth.

October 10, 1950.

E. J. Stahr, Judge.

Henry Jack Wilson for appellant.

A. E. Funk, Attorney General, Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE KNIGHT—Affirming.

Appellant was indicted for voluntary manslaughter and upon trial was convicted of that offense and his punishment fixed by the jury at ten years in the penitentiary. He is appealing from a judgment based on that verdict. Reversal is sought on these grounds: (1) that evidence was received out of court by the jury in arriving at a verdict; (2) that the verdict was determined by lot; (3) that appellant has discovered new evidence which could be presented at another trial; (4) that one of the jurors was biased and another was disqualified because he was a lawyer; (5) that the court should have given peremptory instructions for the defendant; (6) that the verdict is against the law and the evidence. For the reason that appellant has waived some of them by not mentioning or urging them in his brief or that there was nothing in the record remotely sustaining some of them or that proper procedure was not followed by appellant at or after the trial to take advantage of them, we will not burden this opinion with a discussion of the first four grounds. It is sufficient to say that all four of these grounds have been considered by the court and all are without merit. If there are grounds for reversal, they must be found in grounds (5) and (6) and this will require some analysis of the evidence.

To sustain the indictment, the evidence produced by the commonwealth was in substance as follows: On Christmas Eve 1949 at about 11:00 o'clock p. m., J. L. McAlister, Jr., was driving his automobile on highway

58 from Clinton to his home in Mayfield. With him on the front seat were his wife, Mrs. Jodie McAlister, and her sister, Ernestine Hutchins. On the rear seat were his father-in-law, Lindsey Hutchins, and his mother-in-law, Mrs. Lindsey Hutchins. McAlister was driving toward Mayfield at a speed of between thirty and thirty-five miles an hour on his own right side of the road when he saw the lights of an approaching automobile as it came over a little grade. He pulled further off toward the berm of the road and had gone only a few feet when his car was struck at the left front fender by the approaching automobile being driven by appellant and both cars ended up in or near the ditch on the right side of the road. The car being driven by appellant was on his left side of the road and on McAlister's right side when the collision occurred and was being driven at a "pretty fast" rate of speed, as testified to by Mr. Hutchins, or at a speed of fifty to sixty miles per hour, as estimated by Mr. McAlister. As a result of the collision Hutchins and McAlister were injured and Mrs. Hutchins and Mrs. McAlister were killed. The members of the McAlister and Hutchins family had been to the home of another member of the family to exchange Christmas presents and the driver, McAlister, had not been drinking. The undertaker, who took the injured parties and appellant to the hospital in an ambulance, and Mr. Tower, a friend of the injured parties who went to the hospital to help in any way he could, both testified that they smelled liquor on the breath of appellant when he was picked up by the former, and at the hospital where the latter saw and talked to him. The state patrol officer and the sheriff, who arrived at the scene of the accident shortly after it happened, testified as to the physical facts, such as the position of the cars after the accident, the marks on the road, etc., and their testimony indicated that the McAlister car was on its right side of the road when it was hit and appellant's car was on its left or wrong side, and both cars were partly in the ditch on the right side. Both testified on cross-examination that no lights were burning on the cars when they saw them. Their testimony as to the position of the cars and the lights was corroborated by two other witnesses, Mr. Hicks and Mr. Montgomery, who arrived at the scene after the accident. Darrall Snow, a 19 year old boy who was in the car with appellant,

was asleep at the time of the accident and could tell little of how it happened. He did testify that he and appellant were going toward Clinton, with appellant driving; that they had been to Fulton to get something to drink; that he had bought a pint of whiskey at Fulton.

For the defense appellant testified that he was 18 years old; that he was driving his car when it was involved in the accident; that he and Snow had been to Fulton and had stopped at Raye's drive-in and had been drinking some; that Snow was drinking whiskey but that appellant had been drinking wine and had had only two drinks, one at Fulton and one at Raye's place; that he did not think he was drunk and that he could drive a car. On cross examination he testified that he was not drunk. His version of the accident follows: "We were going down the road and I looked at Darrell and he was asleep. Just before we started up that little hill I looked over at Darrell and he was asleep and I guess I was going forty or forty-five and, as I came around that little curve, I saw a car coming with one light and I took my foot off the accelerator and put it on the brake and the light blinded me on his car and I couldn't see where I was going and the next thing I knew there was a crash." He was knocked out by the crash and knew nothing until he came to at the hospital where he remained seven days with severe injuries and received treatment at home for two months. Bill Haneline, owner of the wrecker service who brought in the cars, testified that no lights were burning on either car when he got to the scene. Vester Wilkins, who lived near the scene of the wreck, testified that when he arrived shortly after the accident he saw one light burning on the McAlister car, but could not say how many were burning before the wreck. There was testimony by the mother of appellant and by his niece by marriage that at the hospital where they visited appellant on the night of and the next day after the accident they smelled liquor on the breath of McAlister, who was at the same hospital. This testimony was contradicted on rebuttal by Clyde Hopkins, a deputy sheriff who helped take McAlister out of the ambulance at the hospital and stayed with him for some time until he was x-rayed. He smelled no odor of whiskey on his breath.

It is obvious from this resume of all the testimony

that appellant was not entitled to peremptory instructions in his favor. From this conflicting testimony it was for the jury to say whether appellant was under the influence of liquor while driving, whether he was driving on the wrong side of the road when the collision occurred and whether the death of the two women was the result of his reckless driving and his wilful, wanton, and gross negligence, as charged in the indictment and as defined in the instructions, of which no complaint is made. The penalty inflicted by the jury in this case was somewhat severe when compared to those frequently given by juries in voluntary homicide cases resulting from automobile accidents. Newcomb v. Commonwealth, 276 Ky. 362, 124 S.W.2d 486; Dixon v. Commonwealth, 302 Ky. 353, 194 S.W.2d 655; Raymer v. Commonwealth, 303 Ky. 418, 197 S.W.2d 903, and cases therein cited. This court has been reluctant to affirm judgments of conviction of felonies in such cases where the element of intoxication was absent, Middleton v. Commonwealth, 304 Ky. 784, 202 S.W.2d 610, but has upheld numerous convictions of voluntary manslaughter where, as here, there was evidence of intoxication and reckless driving, as shown by the cases above cited and the most recent case of Penix v. Commonwealth, 313 Ky. 587, 233 S. W. 2d 89. It is the province of the jury to fix the penalty and since the maximum penalty fixed by law is 21 years, we cannot say that a penalty of 10 years for the killing of two people under the circumstances disclosed by the evidence in this case is against the law and the evidence or that the verdict was arrived at as the result of passion and prejudice.

After conviction, appellant's attorney urged that the sentence upon him be probated by the trial judge and while his refusal to do so is not urged as a ground for reversal, it is referred to in his brief. It is the view of the writer of this opinion that this is a case where probation of the sentence might well have been given by the trial judge to prevent an 18 year old boy from serving a long sentence in the penitentiary with hardened criminals. However that is a matter within the discretion of the trial judge from all the facts within his knowledge, including the character and background of appellant. We cannot interfere with his discretion.

Wherefore the judgment is affirmed.