**Leamon FLYNN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 31, 1957.

R. B. Bertram, Monticello, for appellant.

Jo M. Ferguson, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

The principal question on the appeal from a judgment of conviction of voluntary manslaughter with a penalty of five years' imprisonment is whether the death of a man was caused by blows inflicted by the appellant or by an intervening cause, i. e., whether the undenied facts and circumstances proved by the Commonwealth established corpus delicti in the particular that there was a crime committed, or, as a conclusion of law, proved that a cerebral hemorrhage resulting in his death was from a natural cause.

The appellant, Leamon Flynn, was drinking and in a bad humor, using foul and profane language and otherwise misbehaving, at a box supper held at the Freedom School House in Wayne County on a Saturday night in October 1955. Elmer New, a man about 63 years of age, came up and put his hand on Flynn's shoulder, asked him not to act that way, to quit "bothering the girls" and to come outside with him. Thereupon Flynn saying, "No son-of-a-bitch is going to take me anywhere", hit New in the head with his fist and knocked him back into the crowd or to his knees. After he got up or caught his balance, Flynn hit him again and knocked him down. He continued to strike New violently and viciously and knocked him down several times. When the defendant's father tried to stop him, he told

him to "stand back" and said among other profanity, "I will kill the son-of-a-bitch."

New suffered bruises and cuts on his face and head. He walked home with a companion, a distance of a mile and a half or two miles, stopping along the way. That night and the next day he complained of severe headaches, laid on the bed, could hardly walk, was sick at his stomach, was mentally confused and suffered otherwise. He had not previously manifested any such conditions. On Monday morning he was taken to the office of Dr. Duncan, in Monticello. He described his wounds as multiple abrasions all around his right eye and ear and on the back of his head. The doctor dressed his bruises and gave him some medicine. That night Dr. Duncan, called to New's home, found him completely unconscious and without reflexes. He died during the night. The doctor testified that death was caused by a "massive cerebral hemorrhage". He described such condition as being where the blood vessels over the surface of the brain are ruptured and blood is spilled in such an amount as to cause pressure on the brain and unconsciousness. Upon a hypothetical question the doctor expressed the opinion that "getting mad, having a lick on the head, [and] going through increased physical exertion is something that we do not like for anyone with high blood pressure to do", and that such over-exertion would increase the likelihood of a hemorrhage. The doctor did not undertake to say categorically what caused the hemorrhage, but did say that a person can have such severe brain damage and a fractured skull without any definite external marks.

The above recitation is a composite of the testimony of several witnesses. The defendant introduced no evidence.

■ With regard to the contention that death was due to a natural intervening cause for which the appellant may not be held responsible, it may be said to be an ancient and well-settled principle of the law of homicide that one is criminally liable where

he inflicts wounds that cause the death of the victim indirectly or through a chain of natural effects and cause, unchanged by human action, or where violence inflicted by the accused was a clear contributing cause of death although perhaps not the sole cause. Commonwealth v. Kilburn, 236 Ky. 828, 34 S.W.2d 728; Tucker v. Commonwealth, 303 Ky. 864, 199 S.W.2d 631. Thus, it is said in Section 59, Warren on Homicide:

"If a wound causes congestion of the brain or if the congestion of the brain causes exposure to the inclemencies of the weather, from either of which death result, it must be deemed that the person who gave the wound caused the death by the infliction of the same."

■ The appellant cites as supporting his point that his case is within the class of cases which hold that the accused is blameless if death would not have occurred but for an intervening cause for which he was not responsible, Privitt v. Commonwealth, 271 Ky. 665, 113 S.W.2d 49; Hubbard v. Commonwealth, 304 Ky. 818, 202 S.W.2d 634; Witt v. Commonwealth, 305 Ky 31, 202 S.W.2d 612; Graves v. Commonwealth of Kentucky, Ky., 273 S.W.2d 380. We do not think the cases are in point for in them there was no corporal or physical injury inflicted by the accused, or his act was neither illegal nor essentially dangerous. In the present case there was continuity and connection between the violent blows inflicted by the accused and the death of his victim. There was no evidence of material neglect or mistreatment of the wounds. This is no different from a case where one wounded another by a bullet and death resulted from internal or external bleeding. If we accept the theory indicated by the examination of the doctor that the excitement of the moment may have contributed to causing the hemorrhage, it cannot be overlooked that the excitement was caused by the defendant's sudden and vicious assault. Though walking home was not good for the victim, it is folly to say

that fact could relieve his assailant of the consequences of his wrongful act.

The instructions covered the whole law of the case. Clearly there was no place for an instruction on self-defense.

The judgment is affirmed.