**Rex MASON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 24, 1967.

Rehearing Denied Feb. 23, 1968.

William E. Scent, David R. Reed, Jr., Reed, Scent & Reed, Paducah, for appellant.

Robert Matthews, Atty. Gen., Howard E. Trent, Jr., Asst. Atty. Gen., Frankfort, L. M. Tipton Reed, Mayfield, for appellee.

STEINFELD, Judge.

Mason was found guilty of manslaughter in the second degree (KRS 435.022(2)) and his punishment was fixed at confinement in the county jail for 12 months. Mason makes no contention that he could not be found guilty of involuntary manslaughter when he committed an assault. He admits that the evidence was sufficient to support a finding that he was guilty of assault and battery, but he contends that it was insufficient to sustain the finding that he was guilty of involuntary manslaughter. We find this contention without merit. We affirm.

Mason, age 52, was a neighbor of Leonard Coplen who was 72 years of age. They had been friends for many years. On several occasions Mason's hogs had escaped and had damaged Coplen's yard. On September 10, 1966, Mason went to the Coplen residence. Following a heated argument Mason assaulted Coplen. He was bruised about the left temple and sustained lacerations about the cheek and nose.

Mrs. Coplen testified that her husband was on the ground and that Mason was hitting him. She tried to help him but was restrained by another man. After Mason and this other man left, Coplen tried to get up but he could not she said, without her help. She led him to a chair on the porch and while she was calling the Sheriff "he was struggling" and "you could have heard him at the back of the house." She then telephoned the doctor, and "rushed back to (her) husband". By that time he was dead.

Mr. Coplen was in the same chair when the doctor arrived. The doctor testified that "He had been dead only—a short time —exactly how long I don't know." An autopsy was performed by this same physician.

There is only one contention made to support Mason's claim for reversal, and that is "The Commonwealth's own medical testimony proved that the assault and battery did not cause the decedent's death * * * an essential element of criminal homicide."

The interrogation of the physician which is of interest on this issue is as follows:

"A. When I arrived Mr. Coplen was sitting in a rocking chair on the front

porch and he was dead. He had been dead only a short time—exactly how long I don't know. He had some bruises on his head in the left temple area and on his right cheek.

Q. Dr. Simpson, did you examine the body at that time?

A. Yes sir. However, I made a more extensive examination later.

Q. What were your findings based on your examination of Mr. Coplen at that time?

A. We did an autopsy on him. Dr. Howard went with me at the time out to the home and he also assisted me at the autopsy. The bruises on the head were external. There was no evidence of any brain damage from the blows or supposed-blows that caused the bruises. There were no blood clots in the skull inside. His heart showed evidence of fatty degeneration of the heart and also of arteriosclerotic heart disease, which is hardening of the arteries. No further examination was done because there was none needed for this particular thing.

Q. And your findings then show that his death was caused by—

A. Now, that's a hard question to answer. He had a heart condition that could at any time cause death.

Q. Did he die as a result of that heart condition?

A. As far as I know. There was no evidence that anything else caused it.

Q. Now, the cause of Mr. Coplen's death was a coronary occlusion, was it not?

A. Yes sir.

Q. And at the point where you found this occlusion what was the size of it?

A. It was no size; it was occluded.

Q. How far from the heart itself?

A. Actually it was in the muscle of the heart but from the beginning of the heart where it enters the heart it was about midway, three or four inches.

Q. Would you state from your examination whether or not the deceased appeared to have been severely beaten or how would you describe his injury?

A. The injuries were as I have described them. Two blows could have done it. However, I don't know. Of course, you can receive blows without bruising if they are lighter blows.

Q. But you found no internal evidence at all of any damage the deceased sustained from these blows?

A. That's correct.

Q. And he died from a coronary occlusion?

A. Yes.

Q. Caused by arteriosclerosis?

A. Yes.

Q. In treating a condition like you found existed in the deceased would you advise your patient to avoid exertion—extreme exertion or emotional outbreaks or becoming extremely angered?

A. I would think he should.

Q. You said he died of a coronary occlusion?

A. Yes.

Q. And as the history was revealed to you by someone there had been violence shortly before his death—isn't that right?

A. Yes sir.

To support his claim that the Commonwealth has failed to meet the burden necessary to support the judgment, counsel for Mason argues that the crime of involuntary manslaughter requires proof of the killing of another (Middleton v. Common-

wealth, 304 Ky. 784, 202 S.W.2d 610 (1947), and he relies on Witt v. Commonwealth, 305 Ky. 31, 202 S.W.2d 612 (1947), White v. Commonwealth, Ky., 360 S.W.2d 198 (1962), Harvey v. Commonwealth, Ky., 318 S.W.2d 868 (1958) and Hubbard v. Commonwealth, 304 Ky. 818, 202 S.W.2d 634 (1947). Witt and Hubbard were distinguished in Flynn v. Commonwealth, Ky., 302 S.W.2d 851 (1957). White dealt with the sufficiency of evidence to show intent to kill. In Harvey the victim "immediately fell, was rushed to the hospital in an ambulance and died within less than an hour after he was shot". We said "In such circumstances it is not necessary to prove by a physician that the wound inflicted was the cause of death".

In Payne v. Commonwealth, 289 Ky. 590, 159 S.W.2d 430 (1942) we pointed out that the less than perfunctory examination of the doctor disclosed that he discovered neither marks nor wounds on the body and we said that the medical evidence was "neither persuasive nor conclusive on the jury." The uncontradicted proof in Payne showed that the deceased was felled by Payne and that his head struck the hard surface of the road. The deceased did not regain consciousness but was carried to a nearby gas station where he died shortly thereafter. We pointed out that 'there were no intervening causes. We announced the rule that satisfactory evidence must establish "the existence of some criminal agency causing the death", but that "this evidence may be circumstantial". The test announced is that "There must be established such circumstances as from which the jury may draw a reasonable inference that a crime has been committed." We held that the facts and circumstances showed that the blow was "the moving cause of * * * death".

We said in Flynn v. Commonwealth, Ky., 302 S.W.2d 851 (1957) that "* * * one is criminally liable where he inflicts wounds that cause the death of the victim indirectly or through a chain of natural effects and cause, unchanged by human action, or where violence inflicted by the accused was a clear contributing cause of death although perhaps not the sole cause". We pointed out that "* * * there was continuity in connection with the violent blows inflicted by the accused and the death of his victim."

In the matter now before us there was continuity and connection between the violence inflicted and the death. The appellant did not rebut the very strong circumstantial evidence that the death was caused and brought about by the assault. While the doctor was unable to say that the assault caused and brought about the coronary occlusion we hold that the age of the victim, the surrounding circumstances including his attempts to rise, his struggle to live and his almost immediate death were sufficient proof upon which the jury could and did find that the death was caused and brought about by the acts of the accused. Tucker v. Commonwealth, 303 Ky. 864, 199 S.W.2d 631 (1947).

The judgment is affirmed.

All concur.