## FLANARY'S ADM'X v. GRIFFIN et al.

Court of Appeals of Kentucky.

May 4, 1951.

Clarence A. Cornelius, M. F. Hall, Harlan, for appellant.

J. B. Carter, Astor Hogg, Harlan, for appellees.

CAMMACK, Chief Justice.

In August, 1947, in Cumberland, Shelby M. Flanary was fatally stabbed. In June, 1948, a petition was filed in the Harlan Circuit Court, styled "Doris C. Flanary, Administratrix of Shelby M. Flanary, Deceased, v. John Griffin and Bill Griffin." The petition charged that the Griffins willfully and wrongfully stabbed and killed Shelby Flanary, and damages were sought for that alleged wrongful act. The trial resulted in a verdict for $10,000 and judgment in that amount was entered the next day. Appellees were granted a new trial, as will be hereinafter discussed. Upon the second trial the jury returned a verdict for the defendant, John Griffin, and a verdict for the plaintiff against Bill Griffin in the sum of $5,000.

This appeal is prosecuted by Doris Flanary from the judgment rendered upon the verdict in the second trial. The alleged errors are those of law, but the events leading up to and through the stabbing are important insofar as complaint is made of the instructions.

On the day Flanary was killed, he and a son of John Griffin had been driving around in a drunken condition. John Griffin encountered the two and unsuccessfully undertook to get them off the highway. There is evidence he called the police at Cumberland, but nothing came of that. John Griffin then started home and met his son Bill, who is a party defendant. These two returned to Cumberland and John Griffin went into the telephone exchange to place a call for the sheriff at Whitesburg. There is an intimation Flanary learned through Bob White that John Griffin was calling the sheriff. At any rate Flanary came to the door leading into the telephone exchange and asked for John Griffin. There were no eyewitnesses at that time, but soon thereafter blows were heard in the alley into which John Griffin had gone to meet Flanary. Most of the witnesses testified that they noticed nothing unusual about the actions of the two men until blows exchanged between them attracted their attention. It is well substantiated that Bill Griffin, who had approached the telephone exchange to see what was delaying his father, ran across the street when he saw the scuffle and plunged a knife into Flanary's heart. All the appellant's witnesses testified that John Griffin held Flanary while Bill Griffin did the stabbing. John Griffin denied that he held Flanary. Bill Griffin admitted stabbing Flanary, but pleaded defense of himself and his father.

The appellant argues first that the court erred in granting the appellees a new trial. It appears from affidavits that, while the jury was deliberating, counsel for appellees left the courtroom on being assured that the court would notify them when the jury returned with their verdict. The court failed to so notify counsel and the verdict was returned and read while they were absent. The next day the court required the jurors to reassemble and a poll was taken at that time. Four of the jurors stated that the verdict as rendered was not theirs. The appellant thereupon moved the court that an open hearing be conducted in the matter of the polling of the jury. The court overruled this motion, but permitted the appellant to file the affidavits of five of the jurors, in which three of those who had answered the poll in the negative changed their minds and now affirmed that the original verdict was their verdict. Motion and grounds for a new trial were filed then and the court

sustained the motion and granted a new trial, saying that he did so chiefly because the appellees' counsel were not granted an opportunity to poll the jury at the rendition of the original verdict.

The appellant argues that it was the duty of appellees' counsel to be in court at the time the verdict was rendered and that their right to poll the jury was waived, or lost, by their own act in relying upon the court to bring to their attention the fact that the jury had returned.

It is not necessary to decide whether the right to poll the jury is an absolute one in a civil case. There seems to be a division of authority on the question. Some courts hold that the right rests in the sound discretion of the court. Section 324, Civil Code of Practice, provides: " * * * either party may require the jury to be polled—* * *." In any event, the right is recognized in Kentucky in criminal cases although it may be waived. Johnson v. Commonwealth, 308 Ky. 709, 215 S.W.2d 838.

Most cases from other jurisdictions hold that, where counsel relies upon the sheriff, clerk of the court, or court attachés, to notify him when the jury returns with the verdict, and they fail to do so, he has waived his right to poll through his own neglect. The reasoning seems to be that the primary duty is on counsel to try his case, and if he appoints an agent to assist him, he must bear the consequences of the agent's neglect or failure to carry out his instructions. In Seaton v. Smith, 45 Kan. 43, 25 P. 222, an identical situation arose and the Kansas court declared that it was not reversible error when the judge, through oversight, failed to notify counsel, even though the court had assured him that he would be notified when the jury returned.

■ But we are confronted with a situation in which the lower court granted a new trial, which is contrary to what was done in the Kansas Case. Our problem then is not so much one of law, but whether or not the court abused his discretion. We have said many times that this Court will not interfere with the broad discretion of the trial judge in granting a new trial, un-less the abuse of such discretion plainly appears. This question is discussed in Noe v. O'Neil, Ky., 236 S.W.2d 893.

The appellees filed several grounds for a new trial. While the court stated he granted the new trial "chiefly" because he neglected to notify counsel when the jury returned, by implication, he showed that he took notice of other possible errors on the first trial. If the lower court had granted a new trial solely because of his neglect to notify counsel, our problem would be confined to his abuse of discretion on that point alone; but, as pointed out, there may have been other factors which influenced the court.

■ One instruction given on the first trial appears to us to have been so erroneous that it alone would have authorized the granting of a new trial. That instruction follows: "If, however, the jury believe from the evidence that the defendants or either of them sought or commenced the encounter with Shelby M. Flanary in which one or both of said defendants cut and killed Shelby M. Flanary, and thereby brought on the danger, if any, to himself or the other defendant referred to in Instruction No. 2, they should not find for the defendant on the ground of self-defense."

There was no evidence whatever that the appellees brought on the encounter which resulted in Flanary's death. Under this instruction they were denied the right of self-defense if they provoked the encounter, and there is no evidence to justify such a finding. For this reason alone the lower court did not abuse his discretion in granting appellees a new trial.

We now proceed to the alleged errors of the second trial upon which appellant urges a reversal. These errors are: (1) the court erred in not permitting the infant children of Flanary to intervene; (2) the court erred in not permitting testimony to be introduced about those children; and (3) the instructions given were erroneous and prejudicial.

Flanary left surviving him his widow and two infant children. As noted before, the first trial was prosecuted by the widow

as administratrix of her husband's estate. KRS 411.130 is the general wrongful death statute under which the personal representative prosecutes an action. KRS 411.150 is entitled "Action by widow or child of person killed with deadly weapon." The case of Wells' Adm'r v. Lewis, 213 Ky. 846, 281 S.W. 996, shows the harmony between these two sections. See also Sturgeon v. Baker, 312 Ky. 338, 227 S.W.2d 202. Whether or not the infant children were entitled to be made parties to this action depended upon which section Doris Flanary proceeded under. If the action was brought for the benefit of the estate, then the intervening petition of the infant children was properly dismissed, and any testimony as to whether Flanary left a wife or children was properly excluded unless material to some issue in the case. As pointed out in Louisville & N. R. Co. v. Shumaker's Adm'x, 112 Ky. 431, 53 S.W. 12, the recovery goes to the estate of the deceased and the widow and children are not even parties to the action, and it follows that testimony concerning them is prejudicial.

Mrs. Flanary styled her suit as administratrix. The language in the second paragraph of her petition followed somewhat the language of KRS 411.150, but it seems clear to us she was proceeding under KRS 411.130. The instructions in both trials were based on KRS 411.130, and they allowed punitive damages, which are authorized under KRS 411.130, whereas, under KRS 411.150, "vindictive" damages are allowed. We feel, therefore, looking to the petition as a whole, and the instructions based thereon, that Doris Flanary brought this action for the benefit of the estate, and it follows, therefore, that the court did not err in refusing to permit the infant children to be made parties to the action and in refusing to allow testimony to be introduced concerning them.

It is contended that the instructions on the second trial are confusing and that self-defense was unduly emphasized. The instructions were not as concise or as well drawn as they might have been, but there is no prejudicial error contained in them.

Judgment affirmed.